### TEXAS EMPLOYERS' INS. ASS'N v. BOECKER.

### No. 11229.

Court of Civil Appeals of Texas. Dallas.

Sept. 17, 1932.

Rehearing Denied Oct. 15, 1932.

Lawther, Cox & Cramer and James P. Swift, all of Dallas, for plaintiff in error.

W. E. Johnson, of Dallas, for defendant in error.

### JONES, C. J.

In a suit under the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.), defendant in error, Mrs. Elisa Boecker, recovered a lump sum judgment in the sum of $3,329.48 against plaintiff in error, Texas Employers' Insurance Association. This judgment was awarded defendant in error as compensation for the death of her husband while an employee of the McKenzie Construction Company, which carried compensation insurance with plaintiff in error.

The only contested issue in the trial court was whether deceased received his fatal injuries while in the scope of his employment. This issue was submitted to the jury in the form of two special issues, and the verdict of the jury was in favor of defendant in error. The only contested issue in this court is whether the findings of the jury find support in the evidence. The following are the facts:

The city of Dallas caused to be constructed a public improvement known as the "Good Street Underpass." The general construction of this improvement was being done by the Vilbig Construction Company under contract with the city of Dallas. The Southwestern Bell Telephone Company had theretofore constructed a conduit for the laying of its wires underground, and as the Good street underpass required considerable excavation, the city of Dallas required such telephone company to lower its conduit. This work was contracted to be performed by the McKenzie Construction Company, and its performance, at the place of the underpass, required the digging of a deep ditch. This conduit was laid on Floyd street, which crosses Good street, where the underpass was under construction, at right angles; Good street running substantially north and south, Floyd street running substantially east and west. Hawkins street runs parallel with Good street, and is the first street east. To the south of Floyd street, and south of the underpass being constructed, are two railroad tracks, and the next street to the south, running substantially east and west, is Elm street; Floyd street, Good street, and Haw-

kins street, in the vicinity of this construction, were closed to general traffic. The immediate vicinity of the work on the Good street underpass was inclosed by the Vilbig Company by a barricade, and the work being done on the conduit by the McKenzie Construction Company was within this barricade. At the time in question, the ditch for the laying of the conduit had been opened for a depth of several feet from Hawkins street across Good street, and some distance west of same; about a hundred feet south of this open ditch the builder of the underpass had erected a tower and had dug a pit, this tower and pit were between Elm street and Floyd street and was within the Vilbig barricade. The tower and pit were in Good street, and on the east side thereof; to the north of Floyd street, and on the west side of Good street, was located a shanty in which the McKenzie Construction Company kept certain tools and the lanterns to be put out at night as danger signals along the construction of the conduit; other property used by the McKenzie Construction Company was located at different points along Hawkins street, some of it at points on the south side of Floyd street.

The deceased was employed by the McKenzie Construction Company as a night watchman, and it was his duty to report for his work about 4:30 or 5 o'clock p. m. It was necessary for him to clean and refill his lanterns preparatory to putting them out when darkness came, and to perform the special duties of a night watchman in respect to protecting McKenzie Construction Company's property on the ground, and in warning travelers who might attempt to use the closed street. Deceased left his home in Oak Cliff on the street car, got off on Main street at some place south of this work, had necessarily traveled in a somewhat northerly direction, entered the barricade, and was standing at the pit, in the immediate vicinity of the said tower, when he was struck by a truck belonging to the Vilbig Construction Company, and received injuries from which he died. From the time he entered the barricade until the time he was injured, the deceased appears to have been seen by but one person, an employee of the Vilbig Construction Company, who was in the pit and called to deceased to get away from the place where he was standing. Believing that the deceased had not heard the warning, this employee climbed out of the pit, by means of a ladder, in order to direct deceased to leave such place, but when he emerged from the pit, deceased had been injured. The injury was on Saturday afternoon between 4:30 and 5 o'clock, and the employees of the McKenzie Construction Company had quit work that afternoon at one o'clock, except one employee, who was waiting at the tool shanty until deceased should arrive, when he was to give to deceas-

ed his weekly pay envelope and leave the ground in his care as night watchman. This is substantially the material evidence given at the trial of the case, and is undisputed in any material part.

The court submitted two special issues, in answer to which the jury found: (1) That "the injuries to deceased, A. W. Boecker, had to do with and originated in the work, business, trade or profession of the McKenzie Construction Company"; (2) that "the injuries to deceased, A. W. Boecker, were received while the deceased was engaged in or about the furtherance of affairs or business of the McKenzie Construction Company." It was agreed between the parties that all other facts necessary for a judgment in favor of defendant in error existed, and on this agreement and the verdict of the jury, the court entered the judgment in favor of defendant in error.

Plaintiff in error contended that this evidence only established the fact that deceased was injured on his way to work; that his injuries occurred before he reached his place of employment, which is claimed to be the immediate place where the conduit is being constructed, or the tool shanty, where he was to report and relieve the other employee; that the injuries occurred while deceased was on the premises of another not under the control of the McKenzie Construction Company; that the injuries occurred after he had left his intended route of travel to his work and had turned aside several feet to view the work in the pit above described, and that therefore the deceased was not doing any work in the furtherance of his employer's business, but on the contrary, was watching the work of the Vilbig Construction Company when he received his injuries.

Defendant in error contends that when the deceased entered the barricade he had arrived at the zone of his employment and received his injuries within such zone, and at such time when he had entered upon his work as night watchman; that deceased's work should not be restricted to the mere act of reporting to the tool shanty and the placing of his lanterns, for the reason that the laying of the conduit in point of place was so related to the work of the construction of the underpass, that the territory within the barricade of the construction company was necessarily the territory within the zone of the McKenzie work, and that an issue of fact, at least, was raised in reference to whether deceased had arrived at his place of work for the performance of his duties as a night watchman.

■ We are inclined to adopt defendant in error's view of this case. The rule as to when and where an employee becomes engaged in his work under conditions surrounding deceased at the time of his death is so

succinctly stated by the Supreme Court of the United States in the case of Bountiful Brick Company et al. v. Giles, 276 U. S. 154, 48 S. Ct. 221, 222, 72 L. Ed. 507, 66 A. L. R. 1402, that we quote the following therefrom: "And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached."

 We are of the opinion that the place within the said barricade, where deceased received his injuries, while, perhaps, not in its strictest sense, on his employer's premises, still such place was in such proximity and relation to such premises as to be "in practical effect a part of such employer's premises." The deceased being, in legal effect, on a part of the premises of his employer, at a time when his work as night watchman began, and the injury resulting from a hazard of the place of his employment, we are of the opinion that the trial court did not err in overruling the requested peremptory instructions, and in submitting the issue to the jury. In the matter of passing upon the effect of evidence in the light of a requested peremptory instruction, every favorable inference that may properly be drawn from such evidence must be construed by the trial court as a fact against the requested instruction. In the instant case, the jury could have drawn the inference from the evidence that deceased had stopped at the place of his injuries to make a survey of the premises in order to determine at what point warning lanterns should be placed; the jury could also conclude from the evidence that deceased was on his way, within his employer's premises, to the tool shanty in order to begin the actual work of his employment when injured. Either inference is fatal to plaintiff in error's right for a peremptory instruction. All of plaintiff in error's assignments of error are overruled. The following authorities sustain this conclusion: Petroleum Casualty Co. v. Green (Tex. Civ. App.) 11 S.W.(2d) 388; Maryland Casualty Co. v. Smith (Tex. Civ. App.) 40 S.W.(2d) 913; Federal Surety Co.

v. Ragle (Tex. Com. App.) 40 S.W.(2d) 63; United States Casualty Co. v. Hardie (Tex. Com. App.) 299 S. W. 871; Lumberman's Reciprocal Association v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402; Wynn v. Southern Surety Co. (Tex. Civ. App.) 26 S. W.(2d) 691; Security Union Insurance Co. v. McClurkin (Tex. Civ. App.) 35 S.W.(2d) 240; Bountiful Brick Co. et al. v. Giles, supra; Watts v. Continental Casualty Co. (Tex. Civ. App.) 18 S.W.(2d) 591.

It necessarily follows that the judgment of the lower court should be affirmed, and it is so ordered.

Affirmed.