James P. KELTY et ux., Appellants,

v.

The TRAVELERS INSURANCE COMPANY, Appellee.

No. 16495.

Court of Civil Appeals of Texas.

Dallas.

May 21, 1965.

Rehearing Denied June 18, 1965.

Carter, Gallagher, Jones & Magee and Ben Warder, Jr., Dallas, for appellants.

Thompson, Knight, Wright & Simmons, Frank Finn, Jr., and George C. Chapman, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

James P. Kelty and wife, Evelyn Kelty, appeal from a summary judgment denying Mrs. Kelty workmen's compensation benefits. The trial court based its judgment on the specific finding that at the time and on the occasion Mrs. Kelty sustained personal injuries she was not in the course and scope of her employment for her employer within the meaning of the Workmen's Compensation Law of Texas.

## FACTS

There is practically no controversy as to the evidential facts which were submitted to the trial court in the form of depositions, affidavits and exhibits. Mrs. Kelty had been an employee of J. C. Penney & Company at its Casa View Shopping Center store in Dallas for about four years at the time of her accident. Her work was in the alterations department. During her working hours she would stay in her department until called upon to make an alteration elsewhere in the store. She was paid $1.75 an hour, but she was not paid for her lunch hour which extended from 12:00 to 1:00 o'clock. During the one-hour interval she was free to go wherever she wanted to go and do whatever she wanted to do.

The accident in question occurred on January 26, 1963 at 12:55 P. M. She had left the store at 12:00 o'clock noon and drove her own automobile home and had lunch. J. C. Penney & Company did not provide her with means of transportation to go home and back nor did they pay her anything for such transportation. Upon returning from her home she parked her car in a parking area at the rear and to the north of the J. C. Penney building. The weather was bad and it had sleeted the night before and that morning everything was iced over. After alighting from her automobile Mrs. Kelty proceeded in a general southerly direction on the sidewalk toward the back or rear entrance on the east side of the J. C. Penney building where she normally entered the building to go to work. Her sole purpose in entering the building on that occasion was to return to her duties as an employee of J. C. Penney & Company. At a point about ten to twelve feet from the rear entrance she slipped and fell on the icy sidewalk and sustained personal injuries. The sidewalk where Mrs. Kelty fell was immediately adjacent to the J. C. Penney building and was used by the general public and by the employees entering and leaving the store by the back entrance.

Garland E. Sorley, the manager of the J. C. Penney store in question testified by deposition that a sidewalk completely circles the building occupied by J. C. Penney & Company under its lease; that there is an entrance at the front of the store and one at the back, both of which are used by employees in entering and leaving the store. He said that in entering or leaving the store, the employees are necessarily required to walk upon the sidewalk which circles the building. He said that on occasions he had helped clean the sidewalk surrounding the store for the benefit of the public and his employees; that on the day Mrs. Kelty fell it was a rather bad day and that he and other J. C. Penney employees had helped clean the area early that morning before the people came to work. He also said that after Mrs. Kelty's

fall he instructed the janitor to clean up the area again. In his affidavit attached to the motion for summary judgment, Mr. Sorley made general conclusions to the effect that Mrs. Kelty was not acting in behalf of J. C. Penney at the time of her fall; that she was not upon the premises leased by J. C. Penney, nor was the fall at a place maintained or controlled by J. C. Penney. He further said that her fall was on a sidewalk owned by the landlord, Amco Builders, and the sidewalk was open to the general public and was under the supervision and control of the landlord. He said that the public in general was subject to the risks or hazards from the ice on the sidewalk where Mrs. Kelty fell.

Mrs. Edna E. White, a saleslady at the Casa View store, testified by deposition that any employee leaving or entering the store would be required to use the front or back entrance and the sidewalk that circles the building. She said that during the time she had been working at the Casa View store she had seen the manager and other employees of J. C. Penney & Company sweeping and cleaning the walk in that area and especially when the weather was bad the employees had helped clear the ice in front and in back of the building.

The lease executed by J. C. Penney & Company, as lessee, and Amco Builders, as lessor and landlord, provided, *inter alia*:

"*TERM*. 1. TO HAVE AND TO HOLD the said premises, together with all and singular the improvements, appurtenances, rights, privileges and easements thereunto belonging or in anywise appertaining, unto the said Tenant for a term * * *."

\* \* \* \* \* \*

"Landlord further covenants and * * that if the Tenant shall discharge the obligations herein set forth to be performed by the Tenant, the Tenant shall have and enjoy, during the term hereof, the quiet and undisturbed possession of the demised premises, together with

all appurtenances appertaining or appendant thereto."

* * * * * *

"That the Landlord shall be responsible for and keep all parts of the demised premises, the appurtenances thereto (which shall include all sidewalks abutting on the demised premises) and the building * * *, with its appurtenances, in good, safe, tenantable condition, sightly in appearance, and in good order and repair."

* * * * * *

" * * * Tenant shall have the continuous right to use any rights of way which are in use on the date of the execution of this lease leading to and from any rear, front or side entrances to the demised premises * * *."

* * * * * *

"The said parking areas, sidewalks, aisles, streets, and driveways shall not be fenced or otherwise obstructed and shall be kept open at all times for the free use thereof as intended herein."

Another provision of the lease provided that the landlord agreed to keep the sidewalks, aisles, streets and driveways in the said Casa View Shopping Village in good order and repair and to keep the sidewalks and streets properly drained and in a clean and sanitary condition. There is no evidence that the landlord or its agents, servants or employees did anything concerning the performance of these particular covenants, but the J. C. Penney & Company manager testified that on a number of occasions, including the date in question, he and his employees had cleaned the sidewalks near the entrances to the building.

## OPINION

Appellants contend that the trial court erred in rendering summary judgment for appellee insurance company because the pleadings, depositions, affidavits and exhibits conclusively demonstrate the existence of a genuine issue of fact as to whether Mrs. Kelty was acting within the course and scope of her employment at the time she sustained her accidental personal injuries. Appellee counters with the proposition that Mrs. Kelty was shown, as a matter of law, not to be acting within the scope and course of her employment and therefore no fact issue was presented. We agree with appellants that under the particular factual situation here presented that the issue of course and scope of employment was one of fact and not of law.

■ Two well recognized rules of law govern us in our consideration of this appeal. First, we are dealing with a construction to be placed upon the Texas Workmen's Compensation Act, and the courts of our state have repeatedly stated that this remedial statute should be given a liberal construction in favor of the injured employee.

■ It must also be observed that we are here dealing with the propriety of the granting of a motion for summary judgment. Rule 166-A, Texas Rules of Civil Procedure. Any doubts existing concerning the correctness of the granting of the motion for summary judgment must be resolved against the moving party. The movant has the burden to conclusively negative the existence of any genuine issue in regard to material and controlling facts. A defendant moving for a summary judgment must assume the negative burden of showing, as a matter of law, that the plaintiff has no cause of action against him. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W. 2d 929, affirming this court in 243 S.W.2d 220; Seale v. Muse, Tex.Civ.App., 352 S. W.2d 534.

The question to be decided, in the light of these rules, is whether appellee insurance company sustained its burden of demonstrating, as a matter of law, that Mrs. Kelty was not acting within the course and scope of her employment with J. C. Penney & Company at the time she sustained her accidental personal injuries.

Section 1 of Art. 8309, Vernon's Ann. Civ.St. provides that the term "injury sustained in the course of employment" shall include "all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

■ The rule has been repeatedly announced in Texas that an injury received by an employee while using the public streets and highways in going to or returning from the place of employment is not compensable, the rationale of the rule being that in most instances such an injury is suffered as a consequence of risk and hazards to which all members of the traveling public are subject rather than risk and hazards having to do with and originating in the work or business of the employer. Smith v. Texas Employers' Insurance Ass'n, 129 Tex. 573, 105 S.W.2d 192; American General Ins. Co. v. Coleman, 157 Tex. 377, 303 S.W.2d 370; United States Fidelity & Guaranty Co. v. Flanagan, 134 Tex. 374, 136 S.W.2d 210; Whisenant v. Fidelity & Casualty Co. of New York, Tex.Civ.App., 354 S.W.2d 683; Texas General Indemnity Co. v. Bottom, Tex., 365 S.W.2d 350.

There are well defined exceptions to this general rule. In American General Ins. Co. v. Coleman, supra, the Supreme Court discusses three of the exceptions as being: (1) An injury incurred in going to and from work where the means of transportation is furnished by the employer; (2) so also where the employer pays another to transport the employee to and from his work; and (3) so also where the employee, in going to or from his employment, undertakes a special mission at the direction of his employer, or performs a service in furtherance of his employer's business with the express or implied approval of his employer. See also Texas General Indemnity Co. v. Bottom, S.Ct., 365 S.W.2d 350; Jecker v. Western Alliance Ins. Co., S.Ct., 369 S.W.2d 776. Neither of these exceptions are applicable to the instant case.

■ Another exception, however, which is applicable is found in the so-called "access" cases. In these cases a workman who has been injured at a place intended by the employer for use as a means of ingress and egress to and from the actual place of the employee's work has been held to be in the course of his employment. The courts have said that these access areas are so closely related to the employer's premises as to be fairly treated as a part of the employer's premises. We shall discuss the principal authorities dealing with this exception to the general rule.

The leading case in Texas dealing with the "access" exception, and one which we think is controlling of this appeal, is Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S.W. 72, 28 A.L.R. 1402. In that case the employee was employed by Hartburg Lumber Company, which company operated and owned a sawmill in Hartburg, Texas, which was a lumber town, consisting solely of the employer's facilities. A railroad track ran through the town and a part of the lumber company's facilities was situated on either side of the right-of-way. A public road ran parallel to the railroad tracks and there was a dirt crossing from the public road over the railroad tracks which led to the various buildings on the property of the lumber company. This crossing was used by any member of the public desiring to go to any part of the lumber company facilities. On the day in question the decedent quit work at noon, went home for lunch and while returning to the lumber company plant for the purpose of resuming his employment, was struck and killed by a train at the crossing in question. The insurance company contended (as it does here) that the decedent's death did not originate in the work or business of his employer and that at the time of his fatal injuries he was not in or about the furtherance of the affairs

or business of his employer. The Supreme Court, in an extensive opinion, reviewed the authorities from other states and especially Latter's Case, 238 Mass. 326, 130 N.E. 637, 638, and arrived at the conclusion that the injury and death under such circumstances were compensable under the Texas Act. The court held that the railroad crossing bore so intimate a relation to the lumber company's premises that it could hardly be treated otherwise than as a part of the premises. The court pointed out that the lumber company had rights in and to the crossing which was used in connection with the lumber company's business, whether by employees or by members of the public. In announcing the "access" doctrine Justice Greenwood said:

"Was Behnken engaged in or about the furtherance of the affairs or business of his employer when he received the injury causing his death? He was upon the crossing provided as the means of access to his work solely because he was an employee. He encountered the dangers incident to use of the crossing in order that he might perform the duties imposed by his contract of service. Without subjecting himself to such dangers he could not do what was required of him in the conduct of the lumber company's business. He had reached a place provided and used only as an adjunct to that business, and was injured from a risk created by the conditions under which the business was carried on. To hold that he was not acting in furtherance of the affairs or business of the lumber company would be to give a strict interpretation to this remedial statute, which should be liberally construed with a view to accomplish its purpose and to promote justice.

"The injury to Behnken comes within recognized exceptions to the general rule, refusing compensation to employees for injuries sustained on the way to or from work, under acts providing compensation for injuries received in the course of employment."

In Texas Employers' Ins. Ass'n v. Anderson, Tex.Civ.App., 125 S.W.2d 674, wr. ref., this court followed the rule announced in Behnken, supra. In that case the employee was killed while crossing the railroad track near his place of employment. In discussing the question of the situs of the injury Justice Looney said:

"Its use as a means of ingress to and exit from his place of work not only conduced to his safety and convenience, but contributed to the promptness and efficiency with which he was enabled to discharge the duties owing his employer; hence the reason and necessity for his presence upon the railroad track (that portion of the pathway leading over the railroad right of way) when injured, in our opinion, had to do with, originated in and grew out of the work of the employer; and that, the injury received at the time, place, and under the circumstances, necessarily was in furtherance of the affairs or business of the employer."

Again, in Texas Employers' Ins. Ass'n v. Boecker, Tex.Civ.App., 53 S.W.2d 327, err. ref., this court had occasion to follow the "access" doctrine. In that case Chief Justice Jones quoted from the Supreme Court of the United States in the case of Bountiful Brick Company et al v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R. 1402, as follows:

"'And employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's prem-

ises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space before the place where the work is to be done is reached.'"

As was stated by the court in Payne v. Wall, 76 Ind.App. 634, 132 N.E. 707, 49 A.L.R. 427:

"* * * a servant's employment is not limited 'to the exact moment when the workman reaches the place where he is to begin his work, or to the moment when he ceases that work. It necessarily includes a reasonable amount of time and space before and after ceasing actual employment, having in mind all the circumstances connected with the accident. Whether an employee, in going to or returning from the place of his employment, is in the line of his employment, is governed and controlled by the particular circumstances and facts of each case. There must, however, be a line beyond which the liability of the employer cannot continue. Where that line is to be drawn is usually a question of fact.'"

While exact factual situations are difficult to find, especially having to do with snow and ice in Texas, the case of Heacker v. Southwestern Bell Telephone Co., 270 F.2d 505 (Fifth Circuit, 1959) is closely in point. There the employee of the telephone company, on a cold and icy day, was walking on the sidewalk between the hotel where she was staying and the telephone exchange at Denison, Texas. Travel was rendered difficult due to the accumulation of ice and snow on the sidewalk. The employee slipped on the ice on the sidewalk in front of the telephone building as she was entering the same to perform her duties. The court, in reversing a summary judgment for the employer in a negligence

case, held that the place of the accident was, for all practical purposes, a part of the premises of the telephone company and that the employee had no alternative but to attempt to cross the hazardous sidewalk fronting the premises. The court said:

"In our view, the danger inherent in any attempt of Marie Heacker to cross the ice-bound sidewalk in front of appellee's premises on her way to work cannot be other than a peril or hazard incident to or connected with her employment, and we hold that the injury was within the coverage of the Texas statute."

For other cases dealing with the subject see Petroleum Casualty Co. v. Green, Tex.Civ.App., 11 S.W.2d 388, err. ref.; Federal Surety Co. v. Ragle, Tex.Com. App., 40 S.W.2d 63; Employers' Mutual Liability Ins. Co. of Wis. v. Konvicka, 197 F.2d 691 (Fifth Circuit, 1952); Bales v. Service Club No. 1, Camp Chaffee, 208 Ark. 692, 187 S.W.2d 321 (1945); Barnett v. Britling Cafeteria Co. (1932) 225 Ala. 462, 143 So. 813, 85 A.L.R. 85; Larsen's Workmen's Compensation Laws, Vol. 1, Sec. 15.31, p. 205; Lawler, Texas Workmen's Compensation Law, Sec. 101, pp. 215, et seq. While not dealing precisely with "access" cases, see also the recent decision of the Supreme Court of Texas in Shelton v. Standard Ins. Co., March 31, 1965, Tex., 389 S.W.2d 290.

The record in this case presents issuable facts which could support a jury finding that Mrs. Kelty's injuries were sustained at a place so closely connected with the place of her employment as to be, in effect, a part thereof, especially in providing her rights of access to her employment. The sidewalk where she fell was, indeed, an appurtenance to the premises leased by her employer. The parties to the lease in question specifically designated all sidewalks to be appurtenances to the leased premises. While it is true the lease delegates the duty and responsibility to the landlord to keep the sidewalks properly cleaned and drained there is no evidence that the landlord ful-

filled this obligation. On the other hand, there is positive evidence that the lessee, Mrs. Kelty's employer, did assume the responsibility for the proper maintenance of the sidewalk in question by repeatedly cleaning the same and undertaking to remove the ice from the sidewalk even on the very day the accident occurred. Such testimony, in our opinion, is relevant to the issue that Mrs. Kelty's employer assumed the duty of providing a safe means of ingress and egress to and from the premises where her work was to be performed.

■ Our courts have repeatedly stated that whether an employee was in the course of his employment when he received an injury is ordinarily a question of fact. Federal Underwriters' Exchange v. Lehers, 132 Tex. 140, 120 S.W.2d 791; Liberty Mutual Ins. Co. v. Nelson, 142 Tex. 370, 178 S.W.2d 514; and Texas Employers' Ins. Ass'n v. Davidson, Tex.Civ.App., 295 S.W.2d 482. Also, it is well settled that each case must be determined upon its own particular facts. Texas Employers' Ins. Ass'n v. Anderson, Tex.Civ.App., 125 S.W.2d 674, wr. ref.

■ While we do not hold that under the peculiar facts in this case Mrs. Kelty was acting within the course and scope of her employment at the time she sustained her injuries, as a matter of law, we do hold that the evidence presented by appellee insurance company does not compel the opposite finding as a matter of law. We hold that under the peculiar facts and circumstances in this record that appellee has failed to sustain its burden under the summary judgment proceeding (Rule 166–A, T.R.C.P.) and therefore appropriate issues, together with proper instructions, pertaining to the question of course and scope of employment should have been submitted to a trier of fact.

Appellants' points are sustained and the judgment of the trial court is reversed and remanded.

Reversed and remanded.