**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Franklin N. LEE, Appellee.**

No. 6048.

Court of Civil Appeals of Texas, Waco.

March 27, 1980.

Rehearing Denied April 17, 1980.

John Eckel, Mills, Shirley, McMicken & Eckel, Galveston, for appellant.

Russell L. Cook, Jr., Fisher, Roch & Gallagher, Houston, for appellee.

HALL, Justice.

This is a worker's compensation case. Trial to a jury resulted in judgment on the verdict for the plaintiff worker, Franklin N. Lee. The defendant compensation insurance carrier, Texas Employers' Insurance Association, brought this appeal. We affirm the judgment.

All of defendant's points of error relate to the jury's finding that plaintiff was injured in the course of his employment, and to the court's instruction to the jury on the so-called "access doctrine" in connection with that question.

It is provided in section 1 of Article 8309, Vernon's Tex.Civ.St., that the term "injury sustained in the course of employment" within the meaning of our Worker's Compensation Act "shall include . . . injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." This statute has been construed by the courts of our State to mean that "proof that the injury occurred while the employee was engaged in or about the furtherance of his employer's affairs or business is not alone sufficient. He must also show that his injury was of such kind and character as had to do with and originated in the employer's work, trade, business or profession." *Texas Indemnity Ins. Co. v. Cheely*, 232 S.W.2d 124, 126 (Tex.Civ.App.—Amarillo 1950, writ ref'd); *Kurtz v. Liberty Mut. Ins. Co.*, 572 S.W.2d 766, 768 (Tex.Civ.App.—Waco 1978, no writ). However, it is also the rule, known as the "access doctrine," that "employment includes not only the actual doing of the work, but a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done. If the employee be injured while passing, with the express or implied consent of the employer, to or from his work by a way over the employer's premises, or over those of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of the employment as much as though it had happened while the employee was engaged in his work at the place of its performance. In other words, the employment may begin in point of time before the work is entered upon and in point of space

before the place where the work is to be done is reached." *Texas Employers' Ins. Ass'n. v. Boecker*, 53 S.W.2d 327, 329 (Tex. Civ.App.—Dallas 1932, writ ref'd).

In our case the jury's finding that plaintiff was injured in the course of his employment was made in response to special issue no. 2. In connection with that special issue, the court gave the jury these instructions:

By the term "injury in the course of employment" means any injury having to do with and originating in the work, business, trade, or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs of business of his employer, whether upon the employer's premises or elsewhere.

"Employment" includes the actual doing of the work by the worker, and a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be performed. If an employee be injured while passing, with the express or implied consent of the employer to and from his work place over the employer's premises, or over the premises of another in such proximity and relation as to be in practical effect a part of the employer's premises, the injury is one arising out of and in the course of employment as though it had happened while the employee was engaged in his work at the place of its performance.

■ Defendant asserts the court's instruction on the access doctrine and the jury's finding based thereon are not supported by any evidence. The rule by which we must test this "no evidence" complaint is well settled. It requires us to consider only the evidence and the inferences based thereon which are favorable to the instruction and the finding, and to disregard the evidence and inferences that are unfavorable. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1952); *McLain v. Hodge*, 474 S.W.2d 772, 774 (Tex.Civ.App.—Waco 1972, writ ref'd n. r. e.). Viewed in that fashion, the record shows the following material facts.

The City of Dickinson operated a sewage treatment plant near the east end of a city public street known as Nebraska Street, where the street terminated at the Dickinson Bayou. Plaintiff was employed by Sabine Consolidated, Inc. Sabine was constructing some large concrete water purification vats which were to be used in connection with the sewage treatment plant. Sabine's work site was located a short distance west of the City's plant. The work site included areas on both the north and south sides of Nebraska Street, and it also included the street. The only members of the public who used the street in this area were those whose duties carried them to and from the sewage treatment plant. The street was used by Sabine for storage of materials, parking of trucks and equipment, and the formation of materials for use on the job; and it was often so congested that it was almost impassable. The street was approximately 30 feet wide, but its north and south boundaries were not easily discernible. Sabine's office building was located on the south side of the street. A short part of the ragged remains of a fence running east and west was located approximately 15 to 20 feet north of the street in the western part of the work site. A small building and a tool shed were located just north of the fence. The water purification vats under construction were located northeast of the fence and the tool shed, in the north central part of the work site. The area north of the street inclined slightly downward toward the street to a small ditch located near the north side of the street. Plaintiff and the other employees had been instructed by Sabine that they could park their personal cars on either side of the street at the work site, but not to park in the street. A large area between the north line of the street and the fence and the line of the fence if extended east was used by Sabine for storing materials and for parking vehicles and equipment; and this area was also used by Sabine's employees, including plaintiff, for parking their personal vehicles while at work. "Ev-

erybody parked there." This area was "always muddy" from rains, and it and the adjoining part of the street were kept graded, smoothed and maintained by Sabine for the uses stated. Sabine did not own the work site premises. Plaintiff was employed as a carpenter by Sabine. Primarily, his duties involved the construction of wooden frames used in building the concrete water purification vats. However, other duties included "finishing" concrete after it was poured. Plaintiff worked "everywhere" over all of the jobsite. Plaintiff and other employees on the job did not have a set "quitting time" at the end of the workday, and they often worked more than eight hours per day. Plaintiff averaged at least 1½ hours daily overtime. The injury in question was received by plaintiff in the late afternoon or early evening on Friday, June 28, 1975, when plaintiff was preparing to leave the work site in his automobile. When plaintiff decided to quit work that day only two other employees remained on the jobsite with him: a fellow carpenter, and a backhoe operator who was engaged in grading and smoothing the street and the adjoining parking areas. The other carpenter left just ahead of plaintiff, but the backhoe operator continued working. Plaintiff had parked his car between the fence and the north line of the street, well within the boundaries of the work site, at a point 40 to 50 feet from the place where he was physically working on the wooden forms. When plaintiff reached his car he remembered that he had a box of nails belonging to Sabine which he had brought in his car from another work site for use in his work. He determined to place the nails in the company tool shed. When he lifted the box from the trunk of his car a substantial amount of the nails fell to the ground and into the mud from the carton which was wet and rotten. Plaintiff gathered up what he could, and carried the nails to the shed. With this accomplished, plaintiff had no other duties to perform for Sabine in connection with his work. Plaintiff returned to his car to leave the premises.

The car would not start. Although this had not happened before with this automobile, plaintiff had faced the problem with other vehicles when he had worked for a used car lot, and he knew the problem could be the starter. He lifted the hood on his car, and by a method of by-passing the starter solenoid he was able to start the car. Plaintiff then faced the dilemma of either backing his car over the nails he had dropped or moving a large company compressor parked in front of his car in order to drive forward. He chose to move the compressor, and he began doing so by pushing on its wheels. As he was doing this, he tripped over some steel rods on the ground which were used to reinforce concrete. Soon after tripping, plaintiff was run over by his automobile. He was rescued from under the car by the backhoe operator. He suffered severe injuries in the accident, and was hospitalized for approximately two months. Plaintiff does not know what caused the car to start forward and run over him. The backhoe operator did not see the car when it started moving forward.

The access doctrine is a well settled exception to the general rule that the benefits of the Worker's Compensation Act do not apply to injuries received going to and from work. *Texas Compensation Ins. Co. v. Matthews*, (Tex.1974) 519 S.W.2d 630, 631. The cases considering the application of the doctrine support the general propositions that an employee is deemed to be in the course of his employment within a reasonable margin of time necessary for passing to and from the place of his work both before and after his actual hours of service; that an injury received within that period is ordinarily held to have been sustained in the course of employment if it occurs at a place intended by the employer for use by the employee in passing to and from the actual place of service, on premises owned or controlled by the employer, or so closely related to the employer's premises as to be fairly treated as a part thereof; and that whether the injury was received by the

employee under those circumstances is usually a question of fact governed and controlled by the particular facts of each case. Example cases are *Lumberman's Reciprocal Ass'n v. Behnken*, 112 Tex. 103, 246 S.W. 72 (1922), which is considered the leading case on the subject; *Texas Employers' Ins. Ass'n v. Anderson*, 125 S.W.2d 674, (Tex.Civ.App. —Dallas 1939, writ ref'd); *Texas Employers' Ins. Ass'n v. Boecker*, 53 S.W.2d 327, (Tex.Civ.App.—Dallas 1932, writ ref'd); *Kelty v. Travelers Insurance Company*, 391 S.W.2d 558 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.); and *Weaver v. Standard Fire Ins. Co.*, 567 S.W.2d 34 (Tex.Civ.App.— Houston [14th Dist.] 1978, writ ref'd n. r. e.).

In *Behnken*, railroad tracks which ran through the town where the employer's sawmill was located also traversed the mill premises. A dirt crossing over the tracks from a road which ran alongside the tracks within the plant premises was used by the public and sawmill employees in passing to and from the sawmill facilities. The employee was struck and killed at the crossing when he was returning to his job at the plant. The court pointed out that the lumber company employer had rights in and to the crossing which was used in connection with the company's business, whether by employees or by members of the public; held that the crossing bore so intimate a relation to the employer's business that it should be treated as a part of the premises; and concluded that under the circumstances the injury and death were sustained in the course of employment. In *Anderson*, the employee was fatally injured while crawling under a freight train enroute to his home after leaving work. The employer owned or controlled the premises on both sides of the railroad tracks, and the pathway across the tracks where the injury occurred had been in existence and used daily by the deceased and other employees (and occasionally by persons other than employees) for over twenty years as a way of ingress and egress to and from their jobs. This pathway was the shortest and safest of

several which crossed the tracks between the deceased's nearby residence and the place of his work. The court pointed out that its use by him not only conduced to his safety and convenience "but contributed to the promptness and efficiency with which he was enabled to discharge the duties owing his employer," and held that the injury originated in and grew out of the work of the employer. In *Boecker*, the employee, a night watchman, was fatally injured when he was struck by a truck inside a barricaded area of street construction while he was walking to the place of his employment which was located within the barricade. The truck was not owned by the deceased's employer, but by another company which was also doing construction work at the project site. The court said that "the place within the said barricade, where deceased received his injuries, while, perhaps, not in its strictest sense, on his employer's premises, still such place was in such proximity and relation to such premises as to be 'in practical effect a part of such employer's premises,'" and held that a fact question was raised in the evidence as to whether the deceased was on his way within his employer's premises to the place where he was to begin the actual work of his employment when he was injured. In *Kelty*, the plaintiff was injured when she slipped and fell on an icy sidewalk at a point ten to twelve feet from the rear door of her employer's building when she was returning to work from a parking area after lunch. Although the sidewalk was also used by the general public, its use was necessary by the plaintiff in passing to and from her work. Additionally, it was her employer's responsibility under its lease agreement to maintain the sidewalk in a good and safe condition. The court held that the circumstances raised a fact question under the access rule as to whether or not plaintiff was injured in the course of her employment. In *Weaver*, the plaintiff was leaving work and walking to her car which was parked in a designated space in a parking area provided by her employer, through its lease agreement with

its landlord, primarily for the use of its employees. Plaintiff had almost reached her automobile when she slipped and fell and was injured. Although directly concerned with the application of the "personal comfort doctrine," the court noticed that the plaintiff used the parking facility while performing her duties of employment and that the injury occurred while she was preparing to leave her employer's premises, and said in passing that "the access doctrine would have been applicable here and might have been even more favorable to appellant."

■ In our case, the extraordinary circumstances which produced plaintiff's injury occurred within a few minutes after work while he was preparing a safe route to leave in his automobile from an area within his employer's work site which was designated and maintained by the employer for employee parking. We hold that the evidence raised a fact question under the access rule as to whether or not plaintiff was injured in the course of his employment.

Defendant relies upon *Texas Compensation Insurance Company v. Matthews*, (Tex. 1974) 519 S.W.2d 630; *Roberts v. Texas Employers' Insurance Ass'n*, 461 S.W.2d 429 (Tex.Civ.App.—Waco 1971, writ ref'd); *Kimbrough v. Indemnity Ins. Co.*, 168 S.W.2d 708 (Tex.Civ.App.—Galveston 1943, writ ref'd); *Shubert v. Fidelity & Casualty Co. of New York*, 467 S.W.2d 662 (Tex.Civ. App.—Houston [1st Dist.] 1971, writ ref'd n. r. e.); *Dishman v. Texas Employers' Insurance Ass'n*, 440 S.W.2d 727 (Tex.Civ.App.— Fort Worth 1969, writ ref'd n. r. e.); *American Indemnity Co. v. Dinkins*, 211 S.W. 949 (Tex.Civ.App.—Beaumont 1919, writ ref'd); and *Ranger Ins. Co. v. Valerio*, 553 S.W.2d 682 (Tex.Civ.App.—El Paso 1977, no writ). These cases are not factually applicable to our case. In some, the claimants were injured while using public ways whose uses by the claimants were not required by nor derived from their employment. In the others the injuries occurred while the claimants were engaged in personal undertakings

having no relation to their employment or access thereto.

Defendant also asserts that the jury's finding of course of employment is against the great weight and preponderance of the evidence. In the light of the entire record, we hold the evidence is factually sufficient to support the finding.

■ Defendant made several objections to the court's definition of "employment" in special issue no. 2, which set forth the court's charge to the jury on the access doctrine, and requested certain instructions relating to the definition. All were overruled, and defendant assigns error to those rulings. It is our view and holding that these complaints do not present reversible error under the record.

Defendant's points and contentions are overruled. Accordingly, we do not reach an alternative cross point brought forward by plaintiff complaining of the court's refusal to charge the jury on the "personal comfort doctrine."

The judgment is affirmed.