

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RUDOLPH AUTOMOTIVE, LLC D/B/A RUDOLPH MAZDA, | § § | No. 08-24-00142-CV |
| Appellant, | § | Appeal from the |
| | | 384th District Court |
| v. | § | of El Paso County, Texas |
| ANDREA JUAREZ, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF IRMA VANESSA VILLEGAS, DECEASED, | § § | (TC# 2015-DCV-0473) |
| Appellee. | § | |

**MEMORANDUM OPINION**

This case is about who bears the responsibility for a tragic accident involving Appellant Rudolph Mazda's employees after their shift ended and as they were leaving Rudolph's premises. Rudolph did not subscribe to workers' compensation insurance and could therefore be sued for negligence. However, its liability for its employees' negligence and the availability of certain defenses turns on whether the employees were acting in the course and scope of their employment. The jury found that they were not, but the trial court granted a motion to disregard that finding. For the reasons below, we reverse and remand.

# I. FACTUAL AND PROCEDURAL BACKGROUND

In the final days of 2013, the Rudolph Mazda sales team pushed to close the year out strong. On December 27, the dealership was open from 9 a.m. until 8 p.m. The manager on duty, Marcelo Flores, allowed Christian Ruiz, one of the salespeople, to buy beers for the employees to have at the end of the day. When their customers had gone, most of the salespeople had a beer. At trial, there was conflicting evidence about what the employees did during this time. Some employees testified that they were still working, inputting information into their computers and discussing customers, sales, and how to reach their goals. Others said that the employees were exclusively socializing. At around 8:35 p.m., Flores finished his reports and asked the employees to leave so that he could lock up. Ruiz and Villegas walked out of the dealership together. Ruiz backed his vehicle out of his parking space. Unbeknownst to him, Villegas had turned around and was walking back towards the dealership. When Ruiz began to drive forward, Villegas was directly in front of him, and he struck her with his vehicle.[1] Villegas sustained serious injuries including a traumatic brain injury and paralysis. After the accident, Villegas was unable to care for herself and resided in a nursing home until she passed away in 2020.

Villegas's daughter, Andrea Juarez, filed a suit on behalf of herself and her mother against Rudolph entities, Ruiz, and Flores. She asserted claims of negligence and premises liability and sought to hold Rudolph vicariously liable for the negligence of its employees. After a three-week trial, the jury found the following:

1. Villegas and Ruiz were not acting in the course and scope of employment at the time of the accident;
2. Flores was acting in the course and scope of employment at the time of the accident;
3. The negligence of Flores, Ruiz, and Villegas was the proximate cause of the accident;
4. The negligence of Rudolph was not a proximate cause of the accident.

---

[1] Tests conducted that night show that Ruiz's blood alcohol content was .02 and Villegas's was .046, substantially lower than .08, the amount defined as intoxicated. Texas Penal Code Ann. § 49.01(2)(B).

5. The percentage of responsibility attributable to each party was 10% for Rudolph, 25% for Flores; 35% for Ruiz; and 30% for Villegas.

The jury awarded over $4 million in damages to Villegas and Juarez.

On Villegas's motion, the trial court granted a new trial, in part because of the inconsistency between the jury's answers finding that Rudolph was not negligent but nonetheless assigning ten percent of the responsibility to it. Rudolph filed a petition for writ of mandamus, which we denied, but which the Texas Supreme Court granted, holding that the trial court did not have valid grounds to set aside the verdict and grant a new trial. *In re Rudolph Auto., LLC*, 616 S.W.3d 171 (Tex. App.—El Paso 2020, no pet.); *In re Rudolph Auto., LLC*, 674 S.W.3d 289 (Tex. 2023), reh'g denied (Sept. 29, 2023). The Court directed the trial court "to vacate its new-trial order, harmonize the verdict, and proceed in the normal course with the post-trial stages of litigation." *Rudolph*, 674 S.W.3d at 314.

Once before the trial court again, Rudolph filed a motion requesting the trial court to comply with the Texas Supreme Court decision and harmonize the verdict. Juarez filed a motion to disregard the jury's answers that Villegas and Ruiz were not in the course and scope of their employment. Although the trial court had previously denied motions for summary judgment and directed verdict on this issue, this time the trial court ruled that, as a matter of law, Villegas and Ruiz were in the course and scope of their employment when the accident happened. As explained below, this ruling had the effect of apportioning 100% of the liability to Rudolph despite the jury's finding that it was not negligent.

Rudolph appealed asserting that the trial court erred in (1) disregarding the jury's findings that Villegas and Ruiz were not in the course and scope of their employment when the accident occurred and (2) refusing to harmonize the verdict.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

### A. Standard of review

"The right of trial by jury shall remain inviolate." Tex. Const. art. I, § 15. As the Texas Supreme Court stated when it granted mandamus in this case after the trial court first set aside the jury's verdict, "[D]isregarding a jury's verdict is an unusually serious act that imperils a constitutional value of immense importance—the authority of a jury. Such a step may be taken only when clearly supported by sound reasons." *Rudolph*, 674 S.W.3d at 302.

The only "sound reasons" for disregarding a jury's finding is when it is immaterial or "has no support in the evidence." Tex. R. Civ. P. 301; *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 505 (Tex. 2018); *C. & R. Transport, Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966). Courts have also articulated the standard as requiring that the evidence conclusively prove the opposite of the jury's finding before a trial court can substitute its own finding. *Scharer v. John's Cars, Inc.*, 776 S.W.2d 228, 231 (Tex. App.—El Paso 1989, writ denied); *In re Estate of Longron*, 211 S.W.3d 434, 438 (Tex. App.—Beaumont 2006, pet. denied); *Brown v. Bank of Galveston, Nat. Ass'n*, 930 S.W.2d 140, 145 (Tex. App.—Houston [14th Dist.] 1996), aff'd, 963 S.W.2d 511 (Tex. 1998). "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). We must "credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Cent. Ready Mix Concrete Co., Inc. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007).

4

### B.  Texas labor code § 406.033

Texas employers are not required to carry workers' compensation insurance, but the Workers' Compensation Act encourages them to do so. One way in which it does this is by penalizing non-subscribing employers, such as Rudolph, by depriving them of certain common law defenses. *Kroger Co. v. Keng*, 23 S.W.3d 347, 349–50 (Tex. 2000); *Mo-Vac Serv. Co., Inc. v. Escobedo*, 603 S.W.3d 119, 124 (Tex. 2020). This penalty, however, applies only when the employee was injured in the course and scope of her employment:

> In an action against an employer by or on behalf of an employee who is not covered by workers' compensation insurance obtained in the manner authorized by Section 406.003 to recover damages for personal injuries or death *sustained by an employee in the course and scope of the employment*, it is not a defense that:
>
> (1) the employee was guilty of contributory negligence;
> (2) the employee assumed the risk of injury or death; or
> (3) the injury or death was caused by the negligence of a fellow employee.

Tex. Labor Code § 406.033(a)(1–3) (emphasis added).

The jury found that Villegas was not in the course and scope of her employment. The effect of this answer meant that § 406.033 did not apply, and Rudolph could not be liable for Villegas's own negligence. But when the trial court disregarded that finding and substituted it with the opposite finding that Villegas *was* in the course and scope of her employment, the finding that Villegas was 30% at fault became immaterial because her contributory negligence could not operate to reduce Rudolph's liability. Tex. Labor Code Ann. § 406.033(a).

The jury also found that Ruiz was not acting in the course and scope of his employment when the accident occurred. Again, replacing this finding with a finding that Ruiz *was* in the course and scope of employment meant that Rudolph was liable for Ruiz's negligence under both § 406.033 and the principles of vicarious liability. Tex. Labor Code Ann. § 406.033(d) ("the

5

plaintiff must prove negligence of . . . an agent or servant of the employer acting within the general scope of the agent's or servant's employment"); *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130–31 (Tex. 2018) ("an employer is vicariously liable for its employee's negligent acts if those acts are within the course and scope of his employment").

## C. Course and scope of employment

The trial court could not disregard the jury's findings on the ground that they were immaterial; whether Rudolph can be held liable for their negligence depends on those findings. The question before us, then, is whether there was any evidence to support the jury's findings that Villegas and Ruiz were not in the course and scope of their employment. Complicating our review is the fact that Juarez, in her motion to disregard and now on appeal, relies on different definitions than the ones used in the jury charge.[2] In determining whether there is evidence to support jury findings, ordinarily we "must evaluate the evidence with regard to the charge given, not the charge that should have been given." *Laxson v. Giddens*, 48 S.W.3d 408, 411 (Tex. App.—Waco 2001, pet. denied); *see also Enzo Investments, LP v. White*, 468 S.W.3d 635, 642 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

Course and scope of employment is defined as "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer."[3] Tex. Labor Code Ann. § 401.011 (12). The jury charge in this case, however,

---

[2] Juarez did not object to the definitions in the charge and, in fact, proposed them.

[3] A common law negligence claim is not a claim for workers compensation benefits under the Workers' Compensation Act. *In re E. Tex. Med. Ctr. Athens*, 712 S.W.3d 88, 95 (Tex. 2025). Nonetheless, § 406.033 of the Act applies to nonsubscriber negligence cases and since it uses the term "course and scope" of employment, we look to the Act's definitions.

gave the common law definition of course and scope: "An employee is acting in the scope of his employment if he is acting in the furtherance of the business of [his] employer and within the scope of the general authority given him by his employer." Both definitions require that an activity be *in furtherance* of the employer's business to be considered in the course and scope of employment. Rudolph argues that the evidence does not conclusively prove that Villegas was in the course and scope of her employment regardless of whether the statutory or common law definition is used.

Generally, an employee is not in the course and scope of employment when he is going to or from work. *Id*. at 401.011(12)(A). However, the access doctrine is an exception to this rule:

> Under the [access doctrine] exception, the employee is deemed to be in the course of employment if the injury occurs within a reasonable margin of time necessary for passing to and from the place of work both before and after the actual working hours of service, and if it occurs at a place intended by the employer for use by the employee in passing to and from the actual place of service on premises owned or controlled by the employer, or so closely related to the employer's premises as to be fairly treated as a part thereof.

*Tex. Emp. Ins. Ass'n v. Dean*, 604 S.W.2d 346, 349 (Tex. App.—El Paso 1980, no writ); *see also Barker v. Sam Houston State Univ.*, No. 06-22-00076-CV, 2023 WL 4113275, at *4 (Tex. App.—Texarkana June 22, 2023, no pet.) (mem. op.); *Berry Contracting, L.P. v. Mann*, 549 S.W.3d 314, 325 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied); *Turner v. Tex. Employers' Ins. Ass'n*, 715 S.W.2d 52, 54 (Tex. App.—Dallas 1986, writ ref'd n.r.e.); *Tex. Emp. Ins. Ass'n v. Lee*, 596 S.W.2d 942, 943 (Tex. App.—Waco 1980, no writ).

Here too, the jury charge provided a different definition. The charge instructed the jury that

> "[a]n injury occurring while the employee is traveling to or from work is in the course and scope of employment only if the employee is injured at a place where the employer has evidenced an intention that a particular route or area be used by the employee in going to or from work and where the route or area is owned by the employer or is so closely related to the employer's premises as to be fairly treated as a part of the employer's premises."

7

Both definitions (the one Juarez relies on now and the one in the jury charge) have the effect of characterizing an activity as one within the course and scope of employment if it occurs while the employee is entering or leaving the employer's premises. Although the jury charge definition does not expressly limit the applicability of the access doctrine to a "reasonable margin of time necessary for passing to and from work," it implicitly does so by applying when the employee is traveling to and from "work," not simply the "place of work."

## III. ANALYSIS

### A. Evidence in support of the jury's findings.

Whether an employee was acting in the course and scope of her employment is typically an issue of fact. *Mapp v. Maryland Cas. Co.*, 730 S.W.2d 658, 659 (Tex. 1987) (per curiam); *see also Tex. Emp. Ins. Ass'n v. Lee*, 596 S.W.2d 942, 945–46 (Tex. App.—Waco 1980, no writ); *Burkett v. Welborn*, 42 S.W.3d 282, 287 (Tex. App.—Texarkana 2001, no pet.). Only when relevant facts are uncontested can the issue be decided as a matter of law. *See, e.g., SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 640 (Tex. 2015) (holding that the undisputed facts established that the employee was acting in the course and scope of his employment); *Dickson v. Silva*, 880 S.W.2d 785, 788 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ("It is uncontroverted that Robert Dickson was injured by a coworker while he was leaving work on a lunch break."); *Bordwine v. Tex. Employers' Ins. Ass'n*, 761 S.W.2d 117, 120 (Tex. App.—Houston [14th Dist.] 1988, writ denied) ("We hold that the undisputed evidence establishes as a matter of law that appellant was acting within the scope of her employment at the time she sustained her injuries."); *Aetna Life Ins. Co. v. Woods*, 449 S.W.2d 86, 89 (Tex. App.—Fort Worth 1969, writ ref'd n.r.e.) ("[I]t is our opinion that the undisputed facts of the case, together with those stipulated to by the parties, established as a matter of law that Mrs. Woods was acting within the scope of her employment[.]").

8

Juarez characterizes the course and scope issue in this case as being based on undisputed facts and one that can be resolved as a matter of law. She argues that because Villegas was injured on Rudolph's premises as she and Ruiz were leaving work, the access doctrine applies, and she was in the course and scope of employment as a matter of law. Rudolph, on the other hand, argues that the access doctrine applies only in workers' compensation cases, not in non-subscriber negligence cases.[4] We need not reach this issue, however, because even if the access doctrine *can* apply in non-subscriber cases, it does not in *this* case because the jury's verdict was supported by evidence that Villegas and Ruiz remained on the premises for personal reasons rather than in the furtherance of Rudolph's business.

If an employee stops working but stays at their place of employment for personal reasons, she may no longer be in the course and scope of employment even if she is injured on the employer's premises when she is leaving. For example, in *Fowler v. Tex. Emp. Ins. Ass'n*, the employee of a store finished her work for the day but stayed to shop for clothes for herself. *Fowler v. Tex. Emp. Ins. Ass'n*, 237 S.W.2d 373, 375 (Tex. App.—Fort Worth 1951, writ ref'd). After shopping, the employee was preparing to leave and went to the restroom to get a comb she had forgotten during her work period. *Id.* at 376. She was injured when another employee pushed the bathroom door open, and it struck her. *Id.* She argued that she was in the course and scope of her employment under the rule "allowing compensation for injuries received by an employee after his work for the day has ceased, and while he is in process of preparing to leave or leaving the employer's premises"–i.e., the access doctrine. *Id.* The court noted that had the employee left the

---

[4] It cites *OCI Beaumont LLC v. Barajas* for this proposition. 520 S.W.3d 83 (Tex. App.—Beaumont 2017, no pet.). In *Barajas*, the court held that the "access doctrine does not apply to extend the rules that determine when employers can be held vicariously liable or the alleged negligence of their employees." *Id*. at 88. Unlike in this case, the injured person in *Barajas* was not an employee, and so §406.033 and the policy rationale of encouraging employers to carry workers' compensation insurance did not apply.

store once her duties were done, that doctrine would have entitled her to compensation. *Id*. But because she instead engaged in a "personal undertaking having nothing to do with her duties of employment," she was no longer in the course and scope of her employment. *Id*. Similarly, in *Roberts v. Tex. Emp. Ins. Ass'n*, before clocking in, an employee was given permission by her supervisor take some boxes to use for her personal mail. *Roberts v. Tex. Emp. Ins. Ass'n* 461 S.W.2d 429, 430 (Tex. App.—Waco 1970, writ ref'd). She was injured while bringing the boxes to her vehicle in the employer's parking lot. *Id.* The court held that the employee "was not engaged in the furtherance of her employer's affairs or business." *Id.*

The jury heard evidence that Ruiz clocked out at 8:08 and Villegas clocked out at 8:12, and that the accident happened around 8:35 p.m. Juarez says that the time that they clocked out is not determinative as to whether Villegas and Ruiz were in the course and scope of their employment because they were paid on commission. But the jury heard testimony that Rudolph required its salespeople to clock out when they completed their shift and sometimes pay was based on time worked if a salesperson's commission in a particular pay period was insufficient. Therefore, the fact that Villegas and Ruiz clocked out was evidence supporting the jury's finding that they were not working after 8:08 and 8:12.[5]

Nor was there conclusive evidence that the delay in leaving was because the employees were not allowed to leave. The jury heard evidence that the post-closing-hour gathering, for lack of a better word, was not a formal meeting because those were held on Monday and Saturday mornings. Flores and other employees testified that employees were free to leave after they clocked

---

[5] This reasoning should not be construed as establishing concrete time parameters in determining whether an employee is still acting in the course and scope of employment. Rather, we are simply examining the facts in light of whether there exists a fact issue on course-and-scope.

10

out. In fact, another employee testified that he did leave choose to leave instead of having a beer after his shift. Flores also testified that while the employees were having a beer, they were socializing and not working on their computers or talking about work. Ruiz characterized the employees as "chitchatting . . . about everything. I mean, just the normal–anything. I mean, things that you talk with your friends about."[6] Other employees also described the conversation as purely social.[7] Even if their conversation may have involved work-related topics as Juarez argues, other employees that were there that night testified that they did not believe that they were working at the time.

Juarez argues that even if Villegas and Ruiz were exclusively socializing after ending their shift, such activities fall within the course and scope of employment. She cites to *Texas Workers' Compensation Ins. Fund v. Rodriguez*, 953 S.W.2d 765 (Tex. App.—Corpus Christi–Edinburg 1997, pet. denied). In that case, the court held that an employee was in the course and scope of his employment when he was injured tossing a football at work. *Id.* at 766–67. However, in that case, it was routine for employees to toss the football during their regularly scheduled ten-minute breaks during the day. *Id.* at 769. A recreational or social activity is an activity in the course and scope of employment in the following circumstances:

---

[6] However, simply talking about work does not necessarily convert an activity to one within the course and scope of employment as a matter of law. *See Clevenger v. Liberty Mut. Ins. Co.*, 396 S.W.2d 174, 181 (Tex. App.—Dallas 1965, writ ref'd n.r.e.) (holding that course and scope was a question of fact for the jury when an employee, a car salesman, was injured at a company picnic and softball game where employees also viewed and discussed a new vehicle model they would be selling).

[7] We recognize that employees often have friendships with their co-workers. We do not hold here that the substance of a conversation *while* an employee is working establishes as a matter of law whether she is in the course and scope of employment. *Yeldell v. Holiday Hills Ret. & Nursing Ctr., Inc.*, 701 S.W.2d 243, 245–46 (Tex. 1985) (employee was in the course and scope of employment when she was injured while taking a personal call during her shift). But the substance of the conversation in this case was evidence for the jury to consider whether Villegas and Ruiz were still working despite being off the clock.

> (1) participation in such activity is expressly or impliedly required by the employer; (2) or the employer derives some benefit from the activity, other than the health and morale of the employee; (3) or where the injury takes place at the place or immediate vicinity of employment while the employee is required to hold himself or herself in readiness for work, and activity takes place with the employer's express or implied permission.

*Mersch v. Zurich Ins. Co.*, 781 S.W.2d 447, 450 (Tex. App.—Fort Worth 1989, writ denied). None of these factors was conclusively proven in this case. The jury heard testimony that employees could leave at the end of their shift and that at least one employee did so. Rudolph received no specific benefit beyond general morale of its employees. And, although the activity took place on Rudolph's premises, it was after the employees' shift was over and they no longer had to hold themselves ready for work.

Finally, Juarez claims that courts have held that employees are still considered to be in the course and scope of employment for at least 30 minutes after their shift. She cites two cases, *Woods* and *Dean.* Neither announce such a brightline rule. In *Woods*, the court held that an employee was in the course and scope of employment when she stopped working at 3:45, "left the building and reached her car in the parking lot about 4 P.M." *Aetna Life Ins. Co. v. Woods*, 449 S.W.2d 86, 88 (Tex. App.—Fort Worth 1969, writ ref'd n.r.e.). There was no contention, like there is in this case, that the employee remained on the premises for personal reasons or took actions other than those necessary to leave work. In *Dean*, this Court held that the employee, a K-Mart supervisor, was in the course and scope of her employment when she was injured in the parking lot 30 minutes after her shift ended. *Dean*, 604 S.W.2d at 347. However, we also noted what the employee did in those 30 minutes: "checked out, turned in all of the cash receipts, punched the time clock card, picked up her purse and left by the front of the store." *Id.* Like in *Woods*, there was no allegation that the employee did anything other than work-related tasks and preparation for leaving. We did not hold

12

that an employee is per se in the course and scope of employment if she leaves within 30 minutes. In fact, in *Fowler*, the case discussed above, the court held that the employee was no longer in the course and scope of her employment although she engaged in a personal activity for only 15 to 20 minutes following her shift. *Fowler*, 237 S.W.2d at 375–76.

Based on the evidence at trial, the jury could find that because Villegas and Ruiz chose to stay and have a beer after they clocked out, they were no longer in the course and scope of employment by the time they were leaving the premises. Because there is evidence to support the verdict, and the opposite finding was not conclusively proved, we sustain Rudolph's first issue.

### A. Harmonizing the jury's verdict

Rudolph argues that the trial court also erred in refusing to harmonize the verdict as ordered by the Texas Supreme Court and it urges us to do so and render judgment.

Having found that the trial court erred in disregarding the jury's answers, the parties are now back in the same position in which they found themselves after the Texas Supreme Court granted mandamus. In other words, the verdict of the jury is still conflicting in that it found that Rudolph was not negligent but assigned ten percent of the responsibility to it. The trial court erred by failing to comply with Texas Supreme Court's order to harmonize the verdict. *Rudolph*, 674 S.W.3d at 314. We sustain Rudolph's second issue.

However, we decline to render judgment. Although the supreme court stated that harmonizing the verdict was a "simple arithmetical reallocation of the percentages of fault among the remaining parties who *were* found to be at fault," it did not itself conduct that reallocation, instead leaving room for the parties to "dispute whether some other rule requires harmonizing the verdict in a different way." *Id*. at 304. We remand for the same reasons.

## IV. Conclusion

The evidence did not conclusively prove that Villegas and Ruiz were in the course and scope of employment. Instead, it was a question of fact for the jury. Because the jury's answers were supported by evidence, the trial court erred in disregarding those findings. The trial court's order is reversed, and the case is remanded for the trial court to harmonize the verdict and enter judgment.

MARIA SALAS MENDOZA, Chief Justice

August 20, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.
Palafox, J., dissents without opinion.

14