Opinion by Justice Rodriguez
Appellant Berry Contracting, L.P., d/b/a Bay Ltd. employed appellee Gernal Randolph Mann as its foreman for a project at a Valero refinery. Mann was injured crossing a road near the refinery, and he and his wife Jennifer ("the Manns") filed suit against Bay and Juan Tomas Hernandez Alvarez (collectively, "Bay"). Bay asserted that the Manns' suit was barred by the exclusive-remedy defense or "comp bar." The trial court granted partial summary judgment in favor of the Manns, disposing of Bay's exclusive-remedy defense.
We granted this permissive appeal to address four questions posed by the trial court concerning the exclusive-remedy defense. See TEX. R. APP. P. 28.3. Because we resolve each of these questions in favor of Bay, we reverse the summary judgment and remand to the trial court for further proceedings.
I. BACKGROUND
On October 8, 2015, Mann clocked in to work at 6:44 a.m. at a terminal on the side of Up River Road in Corpus Christi, Texas. Around 6:47 a.m., as Mann walked across the road, he was struck by a vehicle driven by Alvarez, also an employee of Bay. There are four different versions of what Mann was intending to do as he crossed the road: (1) gathering water for his workers, (2) preparing for a safety meeting, (3) going to look at an excavation site to determine what paperwork he would need to obtain from Valero before his men could commence work, or (4) walking to his truck to get out of the rain.
Bay submitted proof that at the time of the accident, Mann was employed as Bay's foreman for a project at the Bill Greehey Refinery owned by Valero ("the refinery"). The refinery is located on Up River Road and is relatively close to the site of the accident.
Bay alleges that Mann was covered by two separate, complementary workers' compensation policies. One policy was a "rolling owner controlled insurance program" that was procured by Valero (the "ROCIP policy").[1] The ROCIP policy covered *319 the refinery and was designed to provide blanket workers' compensation coverage to contractors who worked on Valero projects (such as Bay), as well as their employees (such as Mann).
The other policy was procured by Bay for the general protection of its employees (the "standard policy"). When Bay signed the ROCIP policy, it also executed a document which excluded any work at the refinery from the scope of its standard policy. Thus, according to Bay, any work-related injury to a Bay employee was to be covered under either Valero's ROCIP policy or Bay's standard policy, but not both.
Following Mann's injury, Bay submitted notice to the carriers for both policies. Both denied coverage. The agent for the standard-policy carrier asserted that Mann was injured at the refinery, and therefore his injuries were covered by Valero's ROCIP policy and excluded from Bay's standard policy. The agent for the ROCIP carrier took the position that Mann was not in the course and scope of his employment when he was injured, and therefore his injuries were not compensable under the Texas Workers' Compensation Act ("the Act").
The Manns filed this personal injury suit against Bay and Alvarez. Bay sent multiple inquiries to both workers' compensation carriers, asking them to provide benefits to Mann, but both carriers continued to deny coverage. To further pursue coverage and reimbursement from the carriers, Bay filed a claim before the Division of Worker's Compensation at the Texas Department of Insurance ("the Division").[2]
Meanwhile, proceedings continued in the trial court. Bay filed a motion for summary judgment, arguing that it was entitled to judgment as a matter of law on the Manns' claims. Bay maintained that because Mann sustained a work-related injury and was covered by a workers' compensation policy, the exclusive-remedy defense prevented the Manns from filing a personal injury suit against Bay. The trial court denied Bay's motion.
The Manns filed a cross-motion for partial summary judgment, attempting to defeat Bay's exclusive-remedy defense. The trial court granted the Manns' motion and struck Bay's exclusive-remedy defense. The trial court then gave Bay leave to seek a permissive appeal in this Court concerning four questions, which Bay raises as its issues on appeal:
1. Under Valero's Rolling Owner Controlled Insurance Program ("ROCIP") and section 406.123 of the Labor Code, was Bay an employer of Randy Mann for purposes of the exclusive remedy defense?
2. Under the law of agency and quasi-estoppel, is Bay precluded from asserting the exclusive remedy defense because of the ROCIP carrier's denial of coverage to date?
3. Because of the ROCIP carrier's denial of coverage to date, does section 408.001(d) of the Labor Code preclude *320 Bay from asserting the exclusive remedy defense?
4. Was Randy Mann in the course and scope of his employment at the time of his accident?
II. EXCLUSIVE JURISDICTION
In granting this permissive appeal, we asked the parties to brief a jurisdictional question: whether the Division has exclusive jurisdiction over this suit pursuant to American Motorists Insurance Co. v. Fodge, 63 S.W.3d 801, 805 (Tex. 2001). The Act vests the Division with exclusive jurisdiction to determine the ultimate question of whether the claimant is entitled to workers' compensation benefits. Id. at 803. In Fodge , the court held that because a claim for bad-faith denial of benefits depends upon the ultimate question of whether the claimant was entitled to benefits in the first place, the bad-faith issue was also subject to the Division's exclusive jurisdiction over compensability determinations. Id. at 804.[3]
In our initial estimation, it seemed reasonable that under Fodge , the Division's exclusive jurisdiction over compensability determinations would include the parties' dispute here. The parties have debated the issue of whether Mann was injured in the course and scope of his employment, and it is said that "[w]hether the injury occurred in the course and scope of employment is an issue that regards compensability." See Morales v. Liberty Mut. Ins. Co. , 241 S.W.3d 514, 518 (Tex. 2007). The parties also dispute whether a valid workers' compensation policy applies to Mann and protects Bay, which is also part of the Division's ultimate compensability determination. See In re Tex. Mut. Ins. Co. , 157 S.W.3d 75, 81 (Tex. App.-Austin 2004, orig. proceeding).[4]
However, two reasons compel us to conclude that the Division does not have exclusive jurisdiction. First, "[t]he determination of whether any type of claim is within the exclusive jurisdiction of the [Division] depends on whether the claim is based on a claimant's entitlement to benefits." Bestor v. Serv. Lloyds Ins. Co. , 276 S.W.3d 549, 553 (Tex. App.-Waco 2008, no pet.) (quoting Pickett v. Tex. Mut. Ins. Co. , 239 S.W.3d 826, 835 (Tex. App.-Austin 2007, no pet.) ). The Manns' personal injury suit touches on many of the same subsidiary inquiries that would be posed in a Division proceeding to determine whether a claimant was ultimately entitled to compensation (e.g., course and scope), but the Manns' personal injury suit is not "based on" the ultimate question of whether Mann was eligible for workers' compensation benefits. See ids="8365131" index="7" url="https://cite.case.law/sw3d/239/826/#p835">id. ;
*321 Tex. Mut. Ins. Co. v. Sonic Sys. Intern., Inc. , 214 S.W.3d 469, 481 (Tex. App.-Houston [14th Dist.] 2006, pet. denied) (combined appeal & orig. proceeding) (concluding that contract claims were not subject to the Division's exclusive jurisdiction because while the contract claims involved similar issues as a proceeding before the Division, the contract claims "do not depend on the final determination" of compensability itself). There is no aspect of the personal injury suit that requires Mann to ultimately be eligible for workers' compensation benefits, unlike the claim for bad-faith denial of benefits in Fodge ; just the opposite, if Mann's injury is compensable, this would likely bar the Manns' suit pursuant to the exclusive-remedy defense. See Walls Reg'l Hosp. v. Bomar , 9 S.W.3d 805, 806 (Tex. 1999) (per curiam). Accordingly, the Manns' claim is not "based on" Mann's entitlement to benefits, and their suit is not subject to the Division's exclusive jurisdiction to determine the ultimate question of whether the claimant is entitled to workers' compensation benefits. See Bestor , 276 S.W.3d at 553.
Second, the main subject of this appeal is the exclusive-remedy defense; both parties' motions for summary judgment concerned the exclusive-remedy defense, and the trial court granted leave to appeal issues related to the exclusive-remedy defense. This favors the conclusion that the Division does not have exclusive jurisdiction: the Division's exclusive jurisdiction "does not extend to all cases that touch on workers' compensation issues. The district courts decide disputes about whether the Act's exclusive remedy provision applies as a defense to an injured worker's personal injury suit." AMS Const. Co., Inc. v. K.H.K. Scaffolding Houston, Inc. , 357 S.W.3d 30, 38 (Tex. App.-Houston [1st Dist.] 2011, pet. dism'd) (emphasis added) (citing two cases in which the Texas Supreme Court decided substantive issues concerning the exclusive-remedy defense). That is, the main subject of this appeal is an issue which falls within the jurisdiction of the district court, not the Division. See ids="7315563" index="12" url="https://cite.case.law/sw3d/357/30/#p38">id.
Because this suit is not based on Mann's entitlement to worker's compensation benefits, and because this appeal concerns the exclusive-remedy defense, it is not subject to the Division's exclusive jurisdiction.
III. EXCLUSIVE-REMEDY DEFENSE
The main subject of this appeal is Bay's exclusive-remedy defense. In the Manns' motion for summary judgment, they asserted that Bay did not qualify for two elements of the defense: Bay was not Mann's "employer," as that term is used in the Act, and Mann was not injured while in the "course and scope" of his employment. The trial court summarily dispensed with Bay's exclusive-remedy defense, ruling in favor of the Manns.
The recovery of workers' compensation benefits is the exclusive remedy of (1) an employee covered by workers' compensation insurance coverage (2) against the employer, or another employee of the employer (3) for a work-related injury sustained by the employee (i.e., injury in the course and scope of employment). TEX. LAB. CODE ANN. § 408.001(a) (West, Westlaw through 2017 1st C.S.); see Payne v. Galen Hosp. Corp. , 28 S.W.3d 15, 18 (Tex. 2000) (interpreting "work-related injury" to mean injury in the course and scope of employment). Exclusive remedy is an affirmative defense. Vega v. Silva , 223 S.W.3d 746, 748 (Tex. App.-Dallas 2007, no pet.) ; Pierce v. Holiday , 155 S.W.3d 676, 678 (Tex. App.-Texarkana 2005, no pet.).
By its first and fourth issues, Bay asserts that it satisfied both elements of the exclusive-remedy defense which were challenged in the trial court: that Bay was Mann's "employer or an agent or employee of the employer" and that Mann's injury *322 occurred in the "course and scope" of his employment. See TEX. LAB. CODE ANN. § 408.001(a). Bay asserts that it has conclusively proved these elements or, in the alternative, that there is at least a fact issue which prevents the summary disposal of this defense.
A. Standard of Review
We review a grant of summary judgment de novo. Nall v. Plunkett , 404 S.W.3d 552, 555 (Tex. 2013) (per curiam). A party moving for traditional summary judgment has the burden to prove that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c) ; Amedisys, Inc. v. Kingwood Home Health Care, LLC , 437 S.W.3d 507, 511 (Tex. 2014). We review summary judgment evidence in the light most favorable to the party resisting summary judgment, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. SeaBright Ins. Co. v. Lopez , 465 S.W.3d 637, 641 (Tex. 2015). When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. Id. at 641-42.
Evidence is conclusive if reasonable people could not differ in the conclusions drawn from it. Helix Energy Sols.Grp., Inc. v. Gold , 522 S.W.3d 427, 431 (Tex. 2017). When a defendant conclusively establishes all the elements of an affirmative defense to a plaintiff's claim, the defendant is entitled to summary judgment against the plaintiff's claim. KCM Fin. LLC v. Bradshaw , 457 S.W.3d 70, 79 (Tex. 2015). When a movant conclusively negates an essential element of a cause of action, the movant is entitled to summary judgment on that claim. Helix Energy , 522 S.W.3d at 431. In the context of a plaintiff's traditional motion for partial summary judgment to dispose of a defendant's affirmative defense, a plaintiff may prevail by conclusively negating at least one element of the defense. See Taft v. Sherman , 301 S.W.3d 452, 458 (Tex. App.-Amarillo 2009, no pet.) ; see also Tarr v. Lantana Sw. Homeowners' Ass'n, Inc. , No. 03-14-00714-CV, 2016 WL 7335861, at *2 (Tex. App.-Austin Dec. 16, 2016) (mem. op.), judgment withdrawn , appeal dismissed , No. 03-14-00714-CV, 2017 WL 1228870 (Tex. App.-Austin Mar. 30, 2017, no pet.) ; Toal v. McNeely , No. 01-00-01416-CV, 2001 WL 1382513, at *2 (Tex. App.-Houston [1st Dist.] Nov. 8, 2001, no pet.) (op.).
B. Employer Element
By its first issue, Bay asserts that it qualified as Mann's statutory employer. It is undisputed that Bay was Mann's actual employer under the common-law definition of "employer". In the context of workers' compensation, though, "employer" is a statutory term that does not always align with the common-law definition. See Wingfoot Enters. v. Alvarado , 111 S.W.3d 134, 145 (Tex. 2003).
The parties appear to agree that if Bay is to qualify as Mann's statutory employer, it is to be through the definition of employer that is set forth in the ROCIP provision. See TEX. LAB. CODE ANN. § 406.123 (West, Westlaw through 2017 1st C.S.). Under the ROCIP provision, a general contractor and a subcontractor may enter into a (1) "written agreement" under which (2) the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor. Id. § 406.123(a). A written agreement under this section makes the general contractor *323 the employer of the subcontractor and the subcontractor's employees for purposes of the exclusive-remedy defense. Id. § 406.123(e).[5]
Bay has produced its ROCIP policy, under which Valero's insurance carrier provided blanket workers' compensation coverage to Bay and its workers at the refinery. Thus, our resolution of this element depends on whether there was a "written agreement" between Bay and Valero to provide this ROCIP coverage-which, under the plain language of the Act, is different from simply demonstrating the existence of ROCIP coverage itself. See id. § 406.123(a) ; Briggs v. Toyota Mfg. of Tex. , 337 S.W.3d 275, 283 (Tex. App.-San Antonio 2010, no pet.) (citing Entergy , 282 S.W.3d at 436 ). We liberally construe the terms of the Act in favor of coverage in order to effectuate the Act's purposes: lowering costs for employers while assisting injured employees. SeaBright , 465 S.W.3d at 642.
The Manns argue that Bay has produced no evidence of a written agreement, and therefore summary judgment was proper. However, contrary to the Manns' assertion, Bay's record evidence supports the existence of a fact issue concerning whether a "written agreement" exists. See Briggs , 337 S.W.3d at 283. This evidence includes a policy manual from Valero which sets out the terms by which Valero will supply ROCIP coverage to subcontractors such as Bay, and which provides that the manual's terms were mandatorily "incorporated by reference into" the subcontractor's contract with Valero. The ROCIP policy itself is also probative of the existence of a written agreement, especially given that the policy was signed by Bay and makes multiple references to binding both Bay and the policy "sponsor" Valero, and it refers to Bay's execution of a "written contract" with Valero "to provide workers compensation insurance in connection with the designated premises." Finally, Bay submitted an affidavit from Bay's vice-president of safety and human resources which attests that there was a written agreement called the "Alliance Services Agreement."
Viewed in the light most favorable to Bay, see SeaBright , 465 S.W.3d at 641, this evidence would allow reasonable minds to differ concerning the existence of a written agreement to provide ROCIP coverage. See Helix Energy , 522 S.W.3d at 431. Thus, Bay has successfully created a fact issue on the existence of a written agreement. This fact issue prevents the Manns from conclusively negating the employer element. See ids="12385847" index="36" url="https://cite.case.law/sw3d/522/427/#p431">id. The trial court's summary judgment disposing of Bay's affirmative defense cannot be affirmed on the basis of this element. See ids="12385847" index="37" url="https://cite.case.law/sw3d/522/427/#p431">id. ; see also Toal , 2001 WL 1382513, at *2.
However, this evidence does not conclusively prove the existence of a written *324 agreement. See KCM Fin. , 457 S.W.3d at 79 ; Briggs , 337 S.W.3d at 283. Accordingly, Bay has failed to carry its burden to conclusively prove all elements of its affirmative defense, as Bay would be required to prove in order to be entitled to summary judgment disposing of the Manns' claims. We therefore need not consider whether Bay has conclusively proved the other elements of its affirmative defense, because the failure to conclusively prove this element prevents Bay from winning a summary judgment of its own. See KCM Fin. , 457 S.W.3d at 79. Rather, Bay has simply proved that neither party is entitled to summary judgment on the basis of the employer element.
We sustain Bay's first issue. This requires us to consider whether summary judgment in favor of the Manns could be affirmed on any other basis.
C. Filing is Not a Requirement for an Effective Written Agreement
The Manns next argue that even assuming there was a written agreement, this agreement was ineffective because another requirement in the ROCIP provision had not been fulfilled: filing the written agreement with Valero's ROCIP insurance carrier. Section (f) of the ROCIP provision generally requires such filing:
A general contractor shall file a copy of an agreement entered into under this section with the general contractor's workers' compensation insurance carrier not later than the 10th day after the date on which the contract is executed. If the general contractor is a certified self-insurer, the copy must be filed with the division.
TEX. LAB. CODE ANN. § 406.123(f).
However, based on the plain language of the statute, we conclude that the primary qualification is the "written agreement" itself, and the filing of that agreement has no impact on its effectiveness. Section (e) of the ROCIP provision provides that "[a]n agreement under this section makes the general contractor the employer"; it does not state that only a filed agreement will bestow employer status. See id. § 406.123(e). Rather, the filing requirement asks the general contractor to "file a copy of an agreement under this section"-that is, the general contractor must file a copy of the completed agreement. This implies that the agreement is final and effective even before it is filed. Moreover, section (g) provides that a general contractor who enters into an agreement with a subcontractor under this section commits an administrative violation if the contractor fails to file a copy of the agreement as required by Subsection (f). Id. § 406.123(g). This suggests that "failure to submit a copy of the agreement merely constitutes an administrative violation," not that it renders any agreement ineffective. Funes v. Eldridge Elec. Co. , 270 S.W.3d 666, 673 (Tex. App.-San Antonio 2008, no pet.) ; see TEX. LAB. CODE ANN. § 406.123(g). Accordingly, section (f) does not affect the validity of any written agreement or Bay's ability to satisfy the employer element. See Funes , 270 S.W.3d at 673. We reject the Manns' argument.
D. Course and Scope
By its fourth issue, Bay argues that Mann was in the course and scope of his employment at the time of his injury.
1. Applicable Law
Under the Act, "course and scope of employment" means an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer.
*325 TEX. LAB. CODE ANN. § 401.011(12) (West, Westlaw through 2017 1st C.S.); Leordeanu v. Am. Prot. Ins. Co. , 330 S.W.3d 239, 243-44 (Tex. 2010). To qualify, the injury must relate to or originate in the employer's business and occur in the furtherance of the employer's business. See SeaBright , 465 S.W.3d at 642.
2. Discussion
The parties offer multiple versions of Mann's activities on the morning in question. However, there are background facts which remain consistent across all versions. In his deposition, Mann testified that when he arrived at the refinery on the morning of the accident, he parked his vehicle at a lot designated by Bay and Valero. Mann walked to a designated terminal and clocked in at 6:44 a.m., just before his crew's shift formally began at 7:00 a.m. Mann testified that he normally arrived around this time to perform preparatory tasks for the benefit of his crew. It is undisputed that, minutes later, he crossed a road relatively near the entrance to the refinery where he worked. As he crossed, he was struck by another Bay employee.
Taken together and viewed in the light most favorable to the non-movant Bay, these background facts favor a finding of course and scope. See Tex. Emp'rs' Ins. Ass'n v. Lee , 596 S.W.2d 942, 945-46 (Tex. Civ. App.-Waco 1980, no writ) (upholding a jury determination of course and scope where, just after business hours, a worker at an industrial plant was wrapping up his tasks and preparing to leave for the day when he was injured by an automobile on a road near his work site, immediately adjacent to a lot where he had been instructed to park). "Course and scope of employment is not limited to the exact moment when the employee reports for work, the moment when the employee's labors are completed, or to the place where work is done." Tex. Workers' Comp. Ins. Fund v. Rodriguez , 953 S.W.2d 765, 768 (Tex. App.-Corpus Christi 1997), order granting review withdrawn (Oct. 29, 1998). As the Waco Court of Appeals termed it in Lee :
The cases considering the application of the doctrine support the general propositions that an employee is deemed to be in the course of his employment within a reasonable margin of time necessary for passing to and from the place of his work both before and after his actual hours of service; that an injury received within that period is ordinarily held to have been sustained in the course of employment if it occurs at a place intended by the employer for use by the employee in passing to and from the actual place of service, on premises owned or controlled by the employer, or so closely related to the employer's premises as to be fairly treated as a part thereof; and that whether the injury was received by the employee under those circumstances is usually a question of fact governed and controlled by the particular facts of each case.
596 S.W.2d at 945-46.
Despite these background facts, the parties dispute the exact nature of Mann's activities while he was crossing the road, and whether the nature of those activities removes Mann from course and scope. Our review of the record reveals four possible versions of events. The first three versions are consistent with the course and scope of Mann's employment: (1) that he was gathering water for his workers, as Mann reportedly told his doctors in the hospital on the day of the collision; (2) that he was going to look at an excavation to determine what paperwork he would need to obtain for that day's work, as Mann allegedly told an insurance adjuster sometime after the accident; and (3) that he was preparing for *326 a morning safety meeting, as Mann allegedly told his supervisor just after the accident. In each of these versions, Mann's activities certainly originate in and advance Bay's purpose of performing projects at the refinery. See SeaBright , 465 S.W.3d at 642.
However, according to the Manns, the record reflects a fourth version of events that takes Mann outside the course and scope of his employment. According to a report drafted by Mann's supervisor on the date of the accident, Mann reported that he was going to his truck to get out of the rain at the time of the accident.
Even assuming that the Manns had unequivocally established this fourth version of events, there would still remain a fact issue as to whether Mann was in the course and scope of his employment under the "personal comfort" doctrine:
An employee need not have been engaged in the discharge of any specific duty incident to his employment; rather an employee in the course of his employment may perform acts of a personal nature that a person might reasonably do for his health and comfort, such as quenching thirst or relieving hunger; such acts are considered incidental to the employee's service and the injuries sustained while doing so arise in the course and scope of his employment and are thus compensable.
Yeldell v. Holiday Hills Ret. and Nursing Ctr., Inc. , 701 S.W.2d at 243, 245 (Tex. 1985) ; Tex. Mut. Ins. Co. v. Jerrols , 385 S.W.3d 619, 626 (Tex. App.-Houston [14th Dist.] 2012, pet. dism'd).
Here, under the fourth version of events, Mann was walking to his vehicle to avoid the discomfort of being soaked by rain, which was incident to his work out of doors at the refinery. See Lujan v. Houston Gen. Ins. Co. , 756 S.W.2d 295, 298 (Tex. 1988) (finding, as a matter of law, that where an employee was soaked in gas and paint due to his job and was injured when he went to take a bath to resolve his "personal discomfort," the injured employee remained within course and scope at the time of his injury). Even assuming the fourth version to be true, the personal comfort doctrine favors the conclusion that Mann is not excluded from course and scope for simply trying to escape the rain. See ids="9969825,9969678" index="54" url="https://cite.case.law/sw2d/756/295/">id.
In light of the many background facts which favor a finding of course and scope, and the further evidence suggesting that Mann's activities were consistent with course and scope, we conclude that summary judgment could not have been granted in the Manns' favor on the basis of this element. See Helix Energy , 522 S.W.3d at 431. Bay's fourth issue is sustained.
IV. OTHER ARGUMENTS
A. Agency and Estoppel
By its second issue, Bay asserts that the ROCIP carrier's denial of coverage does not prevent Bay from asserting the exclusive-remedy defense. In the trial court, the Manns argued that the workers' compensation insurance carrier was Bay's agent. The Manns reasoned that the carrier's denial of coverage therefore binds Bay, preventing Bay from contesting the issue of coverage on appeal. Based on related reasoning, the Manns asserted that the carrier's denial of coverage estops Bay from taking a contrary position.
This argument was squarely rejected in Port Elevator-Brownsville v. Casados. 358 S.W.3d 238, 244 (Tex. 2012). There, the plaintiff similarly argued that "Texas Mutual's denial of coverage means that [the plaintiff] was not covered" and therefore the employer could not assert the exclusive-remedy defense. Id. The *327 Port Elevator court disagreed, holding that the insurance carrier's denial of coverage did not prevent the defendant-employer from asserting the exclusive-remedy defense. Id. The implication of this holding is that in such circumstances, agency and estoppel do not bind the insured to the insurer's denial of coverage. See ids="7315959" index="59" url="https://cite.case.law/sw3d/358/238/#p244">id. Accordingly, we agree with Bay that neither theory can serve as a basis for affirming summary judgment in the Manns' favor. Bay's second issue is sustained.
B. Striking Affidavits
In the same vein, the Manns object to an affidavit drawn up by Pamela McShann, a representative of the insurance carrier who issued Bay's standard workers' compensation policy. But the basis of the Manns' argument is that the insurance carriers are agents of Bay, a theory we have already rejected. See ids="7315959" index="60" url="https://cite.case.law/sw3d/358/238/#p244">id.
The Manns next assert that the trial court erred in denying its motion to strike the affidavit of David Carlin because the affidavit is conclusory and fails to demonstrate the basis of his personal knowledge. In his affidavit, Carlin testified that he is Bay's vice-president of safety and human resources, as well as Bay's custodian of records pertaining to safety, human resources, and workers' compensation insurance. Carlin's testimony primarily concerned the nature of Bay's workers' compensation coverage, as well as Bay's process of reviewing the events surrounding Mann's injury and submitting the necessary insurance claims.
The trial court's decision to admit or exclude summary judgment evidence is reviewed for an abuse of discretion. Pipkin v. Kroger Tex., LP , 383 S.W.3d 655, 667 (Tex. App.-Houston [14th Dist.] 2012, pet. denied). We find no abuse of discretion here. "[A]n affidavit is sufficient summary judgment evidence only when it gives detailed accounts of the facts it attests to or when it provides supporting documents which tend to support the statements made." Brown v. Mesa Distribs., Inc. , 414 S.W.3d 279, 287 (Tex. App.-Houston [1st Dist.] 2013, no pet.) (emphasis added). Carlin's affidavit describes particular facts and summarizes the content of multiple attached documents, including a transcript of Mann's own deposition. As to the personal knowledge requirement, an affiant's position, job responsibilities, and status as a custodian of records may help demonstrate the basis of his personal knowledge. Rogers v. RREF II CB Acquisitions, LLC , 533 S.W.3d 419, 429 (Tex. App.-Corpus Christi 2016, no pet.). Here, Carlin testified that he was personally involved in the investigation of the injury and the subsequent claims process for workers' compensation, and his personal knowledge was further supported by his position, his relationship with the facts of the case, and his status as a custodian of records. The trial court was within its discretion to deny the Manns' motion to strike Carlin's affidavit. See Pipkin , 383 S.W.3d at 667.
C. Section 408.001(d)
By its third issue, Bay contends that section 408.001(d) of the labor code does not preclude Bay from asserting the exclusive-remedy defense, as the Manns argued in the trial court. See TEX. LAB. CODE ANN. § 408.001(d). Section 408.001(d) primarily deals with situations in which an injured employee has willfully removed himself from the justifiable reach of workers' compensation-for instance, where the employee simply fails to file a claim for compensation, or where the injury is due to the employee's horseplay or willful self-harm. See id. (citing statutory sections related to failure to file notice of injury, *328 failure to file compensation claim, and "exceptions" including horseplay, intoxication, etc.). The Act provides that in such situations, the employee may not collect benefits, but the employer retains access to the exclusive-remedy defense. See id. Reasoning by inversion, the Manns assert that if the insurance carrier denies coverage for any reason other than those referred to in section 408.001(d), then the employer loses access to the exclusive-remedy defense.
We cannot agree. Section 408.001(d) 's only reference to the exclusive-remedy defense is to ensure that employers retain access to the defense even in cases of certain noncompensable injuries; it says nothing of stripping an employer of the defense if coverage is denied for any other reason. See id. Instead, because none of the scenarios referred to in section 408.001(d) are present here, that section neither applies to this case nor provides a basis to affirm summary judgment. Bay's third issue is sustained.
V. CONCLUSION
Neither side has conclusively proved its case with regard to the exclusive-remedy defense. The defense remains a question of fact to be decided by the jury.
Having sustained each of Bay's issues, we reverse the trial court's summary judgment disposing of Bay's exclusive-remedy defense. We remand the matter to the trial court for further proceedings consistent with this opinion.
Dissenting Opinion by Justice Benavides.
DISSENTING OPINION
GINA M. BENAVIDES, Justice
I write separately because I believe that the granting of the petition for permissive appeal in this case is improper, and the petition should have been denied.
Permissive interlocutory appeals are provided by statute in section 51.014(d) of the civil practice and remedies code. See TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d) (West, Westlaw through 2017 1st C.S.). This statute has been strictly construed as a "narrow exception to the general rule that only final judgments are appealable." City of Houston v. Estate of Jones , 388 S.W.3d 663, 666 (Tex. 2012) (per curiam) (internal quotations omitted).
The procedures that govern the filing of permissive appeals are provided for by the civil practice and remedies code, Texas Rule of Civil Procedure 168, and Texas Rule of Appellate Procedure 28.3. See TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(d), (e), (f) ; TEX. R. CIV. P. 168 ; TEX. R. APP. P. 28.3. Specifically, Texas Rule of Civil Procedure 168 states:
On a party's motion or on its own initiative, a trial court may permit an appeal from an interlocutory order that is not otherwise appealable, as provided by statute.
Permission must be stated in the order to be appealed. An order previously issued may be amended to include such permission. The permission must identify the controlling question of law as to which there is a substantial ground for difference of opinion, and must state why an immediate appeal may materially advance the ultimate termination of the litigation.
TEX. R. CIV. P. 168. Among other filing requirements, Texas Rule of Appellate Procedure 28.3 states that a petition for permissive appeal in a civil case must: (1) contain the information required by Rule 25.1(d) to be included in a notice of appeal; (2) attach a copy of the order from which appeal is sought; (3) contain a table of contents, index of authorities, issues presented, *329 and a statement of facts; and (4) argue clearly and concisely why the order to be appealed involves a controlling question of law as to which there is a substantial ground for difference of opinion and how an immediate appeal from the order may materially advance the ultimate termination of the litigation. TEX. R. APP. P. 28.3(e) ; see id. R. 25.1(d).
In their petition, appellants Berry Contracting, L.P., d/b/a Bay Ltd. and Juan Tomas Hernandez Alvarez (Bay) fail to meet their burden entitling them to a permissive appeal. Berry asserts that the requirement that there is substantial ground for difference of opinion on the controlling question of law is "obvious from the fact that [appellees] Gernal Randolph Mann and Jennifer Mann and Bay have taken diametrically opposed legal positions on the exclusive remedy defense." Such an argument is unpersuasive.
With regard to the "substantial grounds for disagreement" requirement for permissive appeals, one commentator has noted that
Substantial grounds for disagreement exist when the question presented to the court is novel or difficult, when controlling circuit law is doubtful, when controlling circuit law is in disagreement with other courts of appeals, and when there simply is little authority upon which the district court can rely.
Renee Forniash McElhaney, Toward Permissive Appeal in Texas , 29 ST. MARY'S L.J. 729, 749 (1998).
I agree with Judge McElhaney's[1] observations regarding the "substantial grounds for disagreement" standard, and courts should take these observations into account when deciding whether to grant a petition for permissive appeal. Nothing in this record, including Bay's petition, demonstrates a substantial ground for disagreement in the exclusive remedy defense. The fact that the parties have taken "diametrically opposed legal positions" is not enough for me to agree that a permissive appeal should be granted. Parties taking opposite legal positions is but one of the joys of litigation, and, in my opinion, simply not enough to warrant a permissive appeal. If we are to utilize that low standard to decide whether substantial grounds for disagreement exists in order to grant a permissive appeal, appellate courts need to brace for an influx of permissive appeals.
Furthermore, nothing in the majority's decision today "materially advance[s] the ultimate termination of the litigation." To the contrary, the majority concludes that neither side "conclusively proved its case with regard to the exclusive-remedy defense," leaving the question to be decided by a jury and remanded the case for trial. This type of protracted litigation should be discouraged and not serve as a basis for permissive appeals.
Accordingly, because I believe that this petition for permissive appeal was improvidently granted in this case, I respectfully dissent.

Under the ROCIP model, "the developer, general contractor and all of the subcontractors become named insureds under a single policy that covers a single construction project, or in some cases, multiple projects." Robert J. Olson, Ins. J.-West Mag. , "The OCIP or Wrap Policy" (July 3, 2006), available at http://www.insurancejournal.com/magazines/features/2006/07/03/71232.htm. "This new insurance model is a drastic departure from the previous insurance model, where each contractor individually purchased and negotiated his or her own policy to protect the company's liability in the event of a claim." Id.

We have no record of what occurred before the Division, and the parties relate conflicting accounts of their proceedings before the Division. According to the Manns, the proceedings concluded when an administrative officer found that Bay had no standing to initiate proceedings before the Division. Bay, on the other hand, asserts that the Division proceedings remain ongoing. In either instance, the status of those proceedings does not affect our disposition on appeal.

Cf. In re Crawford & Co. , 458 S.W.3d 920, 925-26 (Tex. 2015) (orig. proceeding) (per curiam) (discussing a separate set of rules concerning the Division's exclusive jurisdiction over complaints which are, in substance, based on an insurance carrier's "investigation, handling, or settling of a claim for workers' compensation benefits," which are not involved in this case).

Moreover, according to Bay, there are ongoing proceedings before the Division, and some Texas courts have held it necessary to abate suits in the district court in deference to related proceedings before the Division regarding compensability. See In re Luby's Cafeterias, Inc. , 979 S.W.2d 813, 817 (Tex. App.-Houston [14th Dist.] 1998, orig. proceeding) ; see also In re Louisiana-Pac. Corp. , 112 S.W.3d 185, 189 (Tex. App.-Beaumont 2003, orig. proceeding) ("Abatement here also preserves the exclusive power of the Commission to resolve compensation claims presented to it...."); In re Tyler Asphalt & Gravel Co., Inc. , 107 S.W.3d 832, 839 (Tex. App.-Houston [14th Dist.] 2003, orig. proceeding) (requiring abatement of a suit in district court in deference to a second proceeding that stemmed from the Division).

A premises owner (here, Valero) may qualify as a general contractor. See Entergy Gulf States, Inc. v. Summers , 282 S.W.3d 433, 437-38 (Tex. 2009) (op. on reh'g). If there is such a "written agreement," then the general contractor (Valero) would be deemed the statutory employer of both the subcontractor (Bay) and its workers (Mann). See Tex. Lab. Code Ann. § 406.123(e). Bay and Mann would be deemed fellow employees of Valero for purposes of the exclusive-remedy defense, and Bay would therefore satisfy this element, which requires Bay to qualify either as the "employer" or another "agent or employee of the employer. " Id. § 408.001(a) (emphasis added). Once the ROCIP provision is satisfied, "the statutory employer/employee relationship extends throughout all tiers of subcontractors and ... all covered employees are fellow servants who are equally entitled to workers' compensation benefits and equally immune from suit...." TIC Energy & Chem., Inc. v. Martin , 498 S.W.3d 68, 75 n.45 (Tex. 2016) (quoting Etie v. Walsh & Albert Co., Ltd. , 135 S.W.3d 764, 765 (Tex. App.-Houston [1st Dist.] 2004, pet. denied) ).

The Honorable Renee (McElhaney) Yanta now presides over the 150th Civil District Court in Bexar County.