

# NUMBER 13-25-00150-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**TEXAS MILITARY DEPARTMENT,** **Appellant,**

**v.**

**JUAN ANTONIO LOPEZ AND
MAYRA LOPEZ, INDIVIDUALLY
AND AS NEXT FRIENDS OF J.L.,
A MINOR, MARCO ANTONIO LOPEZ,
AND ANGEL LOPEZ** **Appellees.**

---

## ON APPEAL FROM THE 107TH DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

---

# OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca
Opinion by Justice Fonseca**

Appellant Texas Military Department (TMD) argues by one issue that the trial court

improperly denied its plea to the jurisdiction based on sovereign immunity.[1] The parties' disagreement is focused on whether the actions of TMD's employee fall within the state-military forces exception to the motor-vehicle waiver of immunity under the Texas Tort Claims Act (TTCA). We conclude that TMD's employee was engaged in an activity of the state military forces when the underlying accident happened. Therefore, we reverse and render judgment dismissing the case for want of jurisdiction.

## I.    BACKGROUND

This accelerated interlocutory appeal arises from a motor vehicle accident that occurred on October 10, 2023. Sergio Eduardo Arreola, a senior airman with TMD, exited a Stripes parking lot in Brownsville in his state-issued vehicle when a vehicle operated by appellee Juan Antonio Lopez and containing the other appellees, Mayra Lopez, Lopez's wife, and their three children, collided into his state-issued vehicle. The Lopezes filed suit on October 4, 2024, alleging injuries resulting from the collision.[2] According to TMD, Arreola was assigned to the 149th Fighter Wing of the Texas Air National Guard, a division of the TMD, and was only present in Cameron County because he was ordered by the TMD adjutant general to support Joint Task Force – Operation Lone Star (JTF-OLS). TMD further alleged that Arreola "was a member of the State military forces, on active duty status, under lawful military orders, on duty, and executing orders issued to him within his scope of his employment" at the time of the collision.

---

[1] "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). TMD is a state agency, and thus sovereign immunity is at issue.

[2] The Lopezes' original petition also raised claims against Arreola individually; however, those claims were abandoned in subsequent amended petitions, and Arreola is not a party to this appeal.

Arreola testified via affidavit that he was on state active duty status from the date he was activated until the date he was released from mission. He further testified that on the date of the accident he was in uniform and wearing specialized gear. During the accident, Arreola claimed he was on shift, driving a state-issued vehicle, and was responsible for patrolling a designated route and making observations as he drove. Arreola requested permission during his shift to stop at the Stripes convenience store. He testified that TMD commonly used this location "for refueling, restroom use, and purchasing and/or heating food" and that stopping at Stripes was considered "part of the scope of our assignment because no other official location was designated for these purposes."

The Lopezes' suit asserted negligence on Arreola's part because he allegedly failed to yield the right of way, was driving inattentively, failed to keep a proper lookout, failed to timely brake, and failed to use his horn or lights to warn the Lopezes of the oncoming collision. TMD answered and invoked sovereign immunity in its plea. TMD filed a plea to the jurisdiction on February 7, 2025. The center point of its argument was that the TTCA provides an exception to the motor-vehicle waiver of sovereign immunity for "activities of the state military forces when on active duty under the lawful orders of competent authority." TEX. CIV. PRAC. & REM. CODE ANN. § 101.054. TMD attached as evidence an affidavit from Arreola, an order from TMD assigning Arreola to active duty from September 1, 2023, to January 30, 2024, and an affidavit from lieutenant colonel Michael Blew testifying that all military personnel are considered on active duty twenty-four hours a day and that active duty status "is not dependent on the scope of an individual assignment."

3

Without attaching evidence, the Lopezes responded to the plea to the jurisdiction arguing that Arreola was not acting "under the lawful orders of competent authority" when he caused the collision because he was at a rest stop which the Lopezes claim was not an activity of the state military forces. *See id*. According to the Lopezes, TMD's argument would allow personnel to escape all civil liability for any negligent act committed during the length of their orders. The trial court held a hearing on TMD's plea on March 3, 2025, wherein TMD asserted the same arguments from their plea. The Lopezes argued, without any supporting evidence, that Arreola was not conducting any form of surveillance when he stopped at Stripes and was not acting in furtherance of his orders.

The trial court denied TMD's plea by written order the same day.[3] This accelerated interlocutory appeal followed. *See id.* § 51.014(a)(8); TEX. R. APP. P. 28.1(a).

## II. ANALYSIS

The parties do not materially dispute the facts at issue in this case. Instead, the primary disagreement is whether Arreola was performing an activity of the state military forces when he stopped at Stripes to use the restroom, refuel, and/or obtain food, and then was involved in the collision with the Lopezes' vehicle.

### A. Standard of Review

"A plea to the jurisdiction challenges the existence of subject matter jurisdiction; that is, the court's power to decide the case." *Herrera v. Mata*, 702 S.W.3d 538, 541 (Tex. 2024) (citing *Suarez v. City of Texas City*, 465 S.W.3d 623, 632 (Tex. 2015)). "The trial court's ruling on a plea to the jurisdiction is a question of law we review de novo." *Id.*

---

[3] At 5:06 p.m. on the day of the hearing, the Lopezes filed a third amended petition (erroneously titled "Plaintiffs' Second Amended Petition") which argued for the first time that TMD's sovereign immunity was waived by § 101.025 of the TTCA.

(citing *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016)). In de novo review, we give no deference to the trial court's decision. *See In re Est. of Slaughter*, 305 S.W.3d 804, 808 (Tex. App.—Texarkana 2010, no pet.) (citing *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998)).

The Lopezes bore the initial burden to plead facts affirmatively demonstrating the trial court's jurisdiction. *See Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). Jurisdiction can then be challenged based either on the pleadings or on the existence of jurisdictional facts. *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022). We construe pleadings liberally in favor of the pleader and a plaintiff "should be afforded the opportunity to amend" if the challenged jurisdictional defect may be cured with further factual allegations. *Tex. Tech. Univ. Sys. v. Martinez*, 691 S.W.3d 415, 419 (Tex. 2024). We cannot sustain a plea to the jurisdiction if the pleadings generate a fact question. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam); *see also City of Corpus Christi v. Muller*, No. 13-18-00443-CV, 2019 WL 2384162, at *1 (Tex. App.—Corpus Christi–Edinburg June 6, 2019, no pet.) (mem. op.).

However, "[w]hen a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised.'" *Swanson*, 590 S.W.3d at 550 (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). We must consider evidence even when the jurisdictional issue intertwines with the merits of the case. *Id*. If jurisdictional facts are challenged, our standard of review mirrors that of a summary judgment. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770–71 (Tex. 2018). We take as true all evidence favorable to the nonmovant, indulge every reasonable

5

inference and resolve doubts in the nonmovant's favor, and disregard contrary evidence if a reasonable factfinder could do so. *Id*. at 771.

It is foundational that the "party suing the governmental entity bears the burden of affirmatively showing waiver of immunity." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). Thus, a plaintiff can only survive a plea to the jurisdiction "by showing that the statute 'clearly and affirmatively waive[s] immunity' and by also 'negating any provisions that create exceptions to, and thus withdraw, that waiver.'" *City of Austin v. Powell*, 704 S.W.3d 437, 447 (Tex. 2024) (quoting *Rattray v. City of Brownsville*, 662 S.W.3d 860, 866 (Tex. 2023)); TEX. GOV'T CODE ANN. § 311.034.

## B.      Applicable Law

Generally, there is a waiver of sovereign immunity for property damage and personal injury that "arises from the operation or use of a motor-driven vehicle" when "proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A). In such situations, sovereign immunity is waived, and a person can sue the state agency for damages. *Id*. § 101.025.

However, the Texas Legislature excepts from the waiver of immunity "a claim arising from the activities of the state military forces when on active duty under the lawful orders of competent authority." *Id*. § 101.054. The state military forces include the Texas National Guard, Texas State Guard, and other military forces organized under state law. TEX. GOV'T CODE ANN. § 437.001(10), (14). The TMD is "the state agency charged with administrative activities in support of the Texas military forces." *Id.* § 437.001(13). "The adjutant general is the governing officer, policy maker, and head of [TMD]." *Id*. § 437.052.

6

The Texas Government Code defines active duty as "the performance of military or emergency service for this state at the call of the governor or governor's designee" while it defines military duty as "any activity of a service member performing a duty under a lawful military order, including training." *Id*. § 437.001(7), (9). It further defines active military service as "state active duty service, federally funded state active duty service, or federal active duty service." *Id*. § 431.001(1).

"We review questions of statutory interpretation de novo." *Ferchichi v. Whataburger Rests. LLC*, 713 S.W.3d 330, 337 (Tex. 2025). Our objective when reviewing a statute "is to determine and give effect to the Legislature's intent." *Id*. (quoting *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003)). To do so, we will give words their plain meaning in context of the statute as a whole and will avoid constructions that lead to absurd results. *Id*. (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008)). Our guiding principle in interpreting statutory language in the context of immunity is to construe waivers of immunity narrowly. *See Tex. Adjutant Gen.'s Off. v. Ngakoue*, 408 S.W.3d 350, 353 (Tex. 2013).

## C.    Discussion

The parties do not dispute any of the main facts governing applicability of the statute. The record demonstrates that Arreola was a member of the state military forces and was on active duty status on the date of the accident. *See* TEX. GOV'T CODE ANN. § 437.001(10), (14). The record further demonstrates that the order putting him on such status was a lawful order from a competent authority, specifically, the adjutant general. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.054; TEX. GOV'T CODE ANN. § 437.052.

7

Therefore, the dispositive question in this matter is what is considered an activity of the state military forces when on active duty, and specifically whether Arreola's stop at Stripes falls within the umbrella of an activity while he was "on active duty." TMD argues Arreola was performing a task within the ambit of an "activit[y] of the state military forces" because he had active duty orders, he was in uniform and on shift during the accident, he was using a TMD vehicle, the accident occurred on a road that was part of his patrol route, and he was engaged in surveillance in support of TMD's mission while on patrol. Conversely, the Lopezes argue TMD's interpretation of active duty status is overly broad and would allow immunity for any activity of state military personnel during the period of active duty orders. The Lopezes assert that Arreola's job duties did not include stopping at a convenience store and then causing an accident. Importantly, the Lopezes further argue that Arreola was assigned only to patrol part of the Rio Grande River, not the entire Rio Grande Valley as TMD asserts in its brief.

TMD included evidence with its plea to the jurisdiction and challenged the existence of jurisdictional facts. Therefore, our review mirrors that of a summary judgment and we will take as true all evidence favorable to the Lopezes. *See Clark*, 544 S.W.3d at 770–71. But the Lopezes did not attach any evidence to their response, leaving us to decide this matter based on TMD's evidence.

As an initial matter, we reject the Lopezes' argument that immunity does not apply because Arreola was not ordered to cause an accident. It is obvious in any negligence claim involving a state agency that the agency did not intentionally order its employee to commit a negligent act—an intentional tort would definitionally not be negligence. However, Texas law treats suits against government employees for negligent acts as

8

suits against their employers for purposes of dismissing them under sovereign immunity. *See, e.g.*, *Ngakoue*, 408 S.W.3d at 356–57. Therefore, the fact Arreola committed a negligent act does not in and of itself render him outside the scope of the statute for immunity purposes. *See id*.

What's more, if we considered the act taken by Arreola while driving as an intentional and not negligent act, we would have to find that the TTCA does not waive immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2). Furthermore, the § 101.054 waiver exception applies to any claim arising from a servicemember's "activities" undertaken "when on active duty under the lawful orders of competent authority." *Id*. § 101.054. The phrase "under the lawful orders of competent authority" modifies "on active duty," not "activities." Thus, for the exception to apply, the servicemember must have been lawfully ordered to active duty by competent authority, but the actual "activity" upon which the claim is based need not be specifically ordered by competent authority. *See id.*

We now turn to the Lopezes' second contention: that the stop at Stripes, far from the Rio Grande River where Arreola was directed to patrol, put Arreola outside the scope of the exception to the waiver of immunity. The San Antonio Court of Appeals recently examined a similar fact pattern. *See Tex. Mil. Dep't v. Estrada*, No. 04-25-00299-CV, 2025 WL 2408733, at *1 (Tex. App.—San Antonio Aug. 20, 2025, no pet.) (mem. op.). In *Estrada*, a TMD private "was following orders to travel from a weapons check-out location . . . to his assigned duty station" when he was involved in an accident with the plaintiffs. TMD attached similar affidavits to the present matter establishing the private drove a TMD vehicle, had active duty orders, and was considered on active duty at all times during his

9

orders. *Id*. at *2. Our sister court concluded that the private's activity fell within the scope of § 101.054 because he was actively in the process of following orders to travel from one station to another when the accident happened. *See id*. at *5. Though the plaintiffs argued driving was a "ministerial duty" and thus not an activity, the appellate court held that the exception did not "contain any language suggesting the Legislature intended to limit its application to discretionary duties." *Id*. at *4. TMD urges *Estrada* controls our decision here.

While a helpful guidepost, the present matter can be distinguished. Here, unlike in *Estrada*, Arreola did not cause the accident while actively following the orders of his commanding officer. Arreola did obtain permission to stop at Stripes, but he was not directly ordered to stop; furthermore, at the time of the collision Arreola had not been directed to go from one specific location to another. Therefore, *Estrada* alone does not resolve this matter.

*Estrada* is the only case we found examining this exception. We, like the San Antonio Court of Appeals, must turn to the plain meaning of the words in the statute, and agree with its conclusion "that the Legislature intended to withdraw the TTCA's waiver of immunity for claims arising from action that an active-duty member of the Texas state military forces is engaged in pursuant to a lawful order from a qualified authority." *Id*. at *5. Therefore, we must determine whether Arreola's stop at Stripes can be considered an activity Arreola was engaged in pursuant to his lawful order.

To make this determination, we find it helpful to examine the personal comfort doctrine. Arising in the worker's compensation context, this doctrine provides that employees that engage in activities ministering to their personal comfort do not leave the

10

course of employment. *See Emps. Cas. Co. v. Bratcher*, 823 S.W.2d 719, 721 (Tex. App.—El Paso 1992, writ denied). Visiting the bathroom while on the job has been held as staying within the scope of employment and our sister court specifically noted "a person who is on call twenty-four hours a day must have some time to eat, sleep and go to the bathroom." *Id*.

Quenching thirst or relieving hunger has likewise been held to be incidental to an employee's service and injuries sustained while doing these things are still considered compensable and part of an employees' service. *See Berry Contracting, L.P., v. Mann*, 549 S.W.3d 314, 326 (Tex. App.—Corpus Christi–Edinburg 2018, pet. denied); *see also Tex. Mut. Ins. Co. v. Jerrols*, 385 S.W.3d 619, 626 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd); *Yeldell v. Holiday Hills Ret. & Nursing Ctr., Inc.*, 701 S.W.2d 243, 245 (Tex. 1985). Only true deviations from the scope of employment remove an employee from the personal comfort doctrine, such as purchasing cigarettes or flashlight batteries, and tend to be fact specific. *See Mitchell v. Ellis*, 374 S.W.2d 333, 335–36 (Tex. App.—Fort Worth 1963, writ ref'd); *Hudiburgh v. Palvic*, 274 S.W.2d 94, 98, 100–01 (Tex. App.—Beaumont 1955, writ ref'd n.r.e.); *see also Am. Zurich Ins. Co. v. Miller*, No. 01-22-00666-CV, 2023 WL 5535678, at *10 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (mem. op.) (gathering cases).

The distinct departure doctrine is also helpful as a guide. This doctrine holds that employees are generally within the scope of their employment when engaged in work-related travel absent a distinct departure on a personal errand. *See Zurich Am. Ins. Co. v. McVey*, 339 S.W.3d 724, 731 n.4 (Tex. App.—Austin 2011, pet. denied). The First Court of Appeals held that a truck driver stopping during the course of his shift to buy food

11

and drink, and get cash to buy such food, did not depart from his job duties and combined this doctrine with the personal comfort doctrine in making this analysis. *See Miller*, 2023 WL 5535678, at *9.

While neither of these doctrines are binding here, they guide our conclusion that Arreola was engaged in an activity "of the state military forces when on active duty under [his] lawful orders." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.054.[4] In the present matter at the time of the accident, Arreola was on shift, in uniform, using a TMD vehicle and, per the record, had been patrolling for at least an hour. He obtained permission during his shift from a commanding officer to partake in personal comforts such as using the bathroom or obtaining food from the convenience store. *See Bratcher*, 823 S.W.2d at 721. Arreola's temporary stop at Stripes would be held as personal comfort in the workers' compensation context, and we see no reason here why this would not likewise be considered part of Arreola's activities while on patrol. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.054; *Mann*, 549 S.W.3d at 326.

The Lopezes contend Arreola traveled far from his patrol route and this took him outside of the scope of his lawful orders. We disagree. For one, the record only shows that Areola was actively engaged in patrolling at the time he detoured for personal comfort to the only location, or the most frequented location, used by service members. But regardless, distance is not weighed as heavily in the distinct departure doctrine as much as the purpose of the departure. *See Pinkus v. Hartford Cas. Ins. Co.*, 487 S.W.3d 616,

---

[4] We express skepticism at TMD's argument that by virtue of Arreola's order that any act of negligence he might commit during the length of his orders would be covered by the statute's scope, but we need not reach that issue here because we specifically find Arreola was engaged in an activity of the state military forces when committing the alleged negligent act.

12

625 (Tex. App.—Dallas 2015, pet. denied) (finding distinct departure where employee traveled away from hotel on a business trip to go to a family dinner). And even if we assumed that Arreola was a significant distance from his route, this would not take him outside the scope of his activities as a state military force member because, as the record indicates, he remained on patrol while traveling for personal comfort.[5] *See McVey*, 339 S.W.3d at 731 n.4.

The Lopezes also make much of the fact that Arreola's commanding officer gave him permission rather than ordered him to take a rest stop. While the lack of an order limits the applicability of *Estrada*, we do not agree with the Lopezes' narrow reading of § 101.054 that unless Arreola was following a specific narrow order that we cannot consider him to be within the statute's scope. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.054. As the personal comfort doctrine guides us, Arreola was not outside the scope of his patrol activities by mere fact that he stopped and took a restroom break. *See Bratcher*, 823 S.W.2d at 721. Of further note, and even if we agreed with the Lopezes, the accident occurred as Arreola was pulling back out into the roadway and resuming his patrol activities—assuming such activities would have even ceased while Arreola was at Stripes. This fact further supports our determination towards finding that Arreola was still engaged in an activity of the state military forces when the accident occurred. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.054.

We further note that because the statute at issue uses the term "activities" it is arguably broader than the typical scope of employment analysis. *See id*. The scope of

---

[5] This jurisdictional defect cannot be cured with further factual development. *See Martinez*, 691 S.W.3d at 419.

13

military duties by nature take on a broader context than other analogous government employees, such as law enforcement officers, due to soldiers being on duty twenty-four hours a day as the record notes. Those on call for twenty-four hours a day are specifically noted under the personal comfort doctrine as needing time to use the restroom or eat as Arreola was doing here. *See Bratcher*, 823 S.W.2d at 721. The Texas Government Code's broad definitions of military duty and active duty also persuade us towards this approach. *See* TEX. GOV'T CODE ANN. § 437.001(7), (9). We need not decide today whether "activities of the state military forces" encompasses broader actions than that of scope of employment but we note that the query as to what constitutes such activities is inherently a fact-intensive case-by-case determination and that we do not establish a bright-line rule by our holding.

In sum, we hold that this claim arises from the activities of the state military forces because, at the time he committed the alleged negligent acts, Arreola was on active duty pursuant to the orders of the adjutant general to assist JTF-OLS. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.054. He was on shift at the time of the accident and had stopped for food and/or the restroom. We further hold that stopping for these purposes while on shift does not take state military personnel outside the scope of their activities under the statute. Therefore, we conclude that, even when construing the facts in a light most favorable to the Lopezes, the waiver of immunity provided by the TTCA does not apply to the negligence alleged in this case. *See id*. As we are bound to do, we construe the waiver of immunity narrowly and affirm TMD's sole issue. *See Ngakoue*, 408 S.W.3d at 353.

### III.   CONCLUSION

We reverse the trial court's denial of the plea to the jurisdiction and render

14

judgment dismissing the case for want of jurisdiction.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
18th day of December, 2025.